1   SHARTSIS FRIESE LLP
    FRANK A. CIALONE (Bar #172816)
2   fcialone@sflaw.com
    LISA A. JACOBS (Bar #230364)
3   ljacobs@sflaw.com
    KAJSA M. MINOR (Bar #251222)
4   kminor@sflaw.com
    One Maritime Plaza, Eighteenth Floor
5   San Francisco, CA  94111-3598
    Telephone:    (415) 421-6500
6   Facsimile:    (415) 421-2922

7   Attorneys for Plaintiff
    HEARTLAND PAYMENT SYSTEMS, INC.

8

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                    OAKLAND DIVISION

12  HEARTLAND PAYMENT SYSTEMS, INC.,      Case No. 4:14-cv-00437 CW
    a Delaware corporation,
13                                        **PLAINTIFF'S OPPOSITION TO**
                     Plaintiff,           **DEFENDANT'S MOTION TO DISMISS**
14                                        **THE COMPLAINT**
            v.
15                                        Date:        June 12, 2014
    MERCURY PAYMENT SYSTEMS LLC, a        Time:        2:00 p.m.
16  Delaware limited liability company,   Place:       Courtroom 2, 4th Floor
                                          Judge:       Hon. Claudia Wilken
17                   Defendant.

18

19

20

21

22

23

24

25

26

27

28

*(left margin vertical text)* SHARTSIS FRIESE LLP / ONE MARITIME PLAZA / EIGHTEENTH FLOOR / SAN FRANCISCO, CA  94111-3598

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED ...................................... 2

III. STATEMENT OF FACTS ....................................................................... 2

IV.  ARGUMENT ........................................................................................... 3

A.   In Ruling On The Motion, The Court Must Accept The Facts Pleaded As True And Draw All Inferences In Heartland's Favor. .............................................. 3

B.   No Circuit Court Has Ruled On Whether Rule 9(b) Applies To Lanham Act False Advertising Claims. ..................................... 3

C.   The Allegations Of The Complaint Are Pled With Sufficient Particularity To Satisfy Rule 9(b)'s Heightened Pleading Requirement. ........................ 5

1.   The Complaint Alleges Actionable False Statements In Commercial Advertising And Promotion With Sufficient Particularity. ............................................................. 5

2.   Rule 9(b) Is Less Stringently Applied Where The Factual Details Are Uniquely Known To The Defendant. ........................ 8

3.   Allegations Founded On Information And Belief Are Permissible. ........ 11

4.   The Complaint Sufficiently Alleges False Statements Made By Mercury And Repeated By Its Agents -- Its POS Partners. ................ 12

D.   The Alleged False Statements Constitute Advertising And Promotion. .............. 13

1.   Statements To Merchants Constitute Advertising. ................................. 14

2.   Merchant Applications Constitute Advertising. ..................................... 15

3.   Mercury's Operating Guide Constitutes Advertising. ............................ 16

4.   The Monthly Billing Statements Constitute Advertising. ....................... 17

5.   A "Rate Match Guarantee" Is Not Puffery. ........................................... 18

6.   Mercury's 2008 Bid Constitutes Advertising. ....................................... 18

E.   Heartland Has Standing To Bring Its UCL and FAL Claims. ........................... 20

1.   The Complaint Alleges False Advertisements Made In California. ........ 20

2.   Actual Reliance Need Not Be Pled In Competitor Cases Under The UCL -- Yet Heartland Does Allege Actual Reliance By Merchants. ...... 21

F.   Heartland Has Stated Claims For Intentional Interference With Prospective Economic Advantage and Contractual Relations. .......................... 23

1.   Heartland Has Sufficiently Alleged Independently Wrongful Conduct In Support Of Its IPEA Claim. .................................................. 23

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Case No.
4:14-cv-00437 CW

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

|   | 2. | Heartland Has Sufficiently Alleged Economic And Contractual Relationships That Were Disrupted By Mercury's Wrongful Conduct. | 23 |

| | G. | If The Complaint Is Dismissed, Leave To Amend Should Be Granted | 25 |

| V. | CONCLUSION | 25 |

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## FEDERAL CASES

4

*Adobe Sys. v. Coffee Cup Partners, Inc.,*
5
    2012 U.S. Dist. LEXIS 127602 (N.D. Cal. Sept. 6, 2012) (Wilken, J.) ............................11, 12

6
*Am. Specialty Health Group, Inc. v. Healthways, Inc.,*
    2012 U.S. Dist. LEXIS 147522 (S.D. Cal. Oct. 12, 2012) ...........................................10. 16, 22
7

*Arch Ins. Co. v. Allegiant Prof'l Bus. Servs.,*
8
    2011 U.S. Dist. LEXIS 58261 (C.D. Cal. May 23, 2011) ........................................................8

9
*Autodesk, Inc. v. Dassault Systemes Solidworks Corp.,*
    2008 U.S. Dist. LEXIS 109800 (N.D. Cal. Dec. 18, 2008) ....................................................4
10

*Avon Prods. v. S.C. Johnson & Son,*
11
    984 F. Supp. 768 (S.D.N.Y. 1997) .........................................................................................15
12

*Axcan Scandipharm Inc. v. Ethex Corp.,*
13
    585 F. Supp. 2d 1067 (D. Minn. 2007) ....................................................................................8

14
*Carolina Cas. Ins. Co. v. Team Equip., Inc.,*
    741 F.3d 1082 (9th Cir. 2014) ...............................................................................................25
15

*Churchill Village, L.L.C. v. GE,*
16
    169 F. Supp. 2d 1119 (N.D. Cal. 2000) .................................................................................20
17

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
18
    173 F.3d 725 (9th Cir. 1999) .................................................................................................14

19
*In re Conn. Mobilecom, Inc.,*
    2003 U.S. Dist. LEXIS 23063 (S.D.N.Y. Dec. 23, 2003) ...............................................15, 17
20

*Cook, Perkiss & Liehe, Inc. v. Nor. Cal. Collection Service, Inc.,*
21
    911 F.2d 242 (9th Cir. 1990) .................................................................................................18

22
*Daghlian v. DeVry Univ., Inc.,*
23
    2007 U.S. Dist. LEXIS 97797 (C.D. Cal. Dec. 10, 2007) ......................................................15

24
*Dahlia v. Rodriguez,*
    735 F.3d 1060 (9th Cir. 2013) .................................................................................................3
25

*Diaz v. Bank of Am. Home Loan Servicing,*
26
    2010 U.S. Dist. LEXIS 143885 (C.D. Cal. Dec. 16, 2010) .....................................................9
27

*Dodson v. Tempur-Sealy Int'l, Inc.,*
28
    2014 U.S. Dist. LEXIS 54071 (N.D. Cal. Apr. 16, 2014) ......................................................19

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- iii -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

*Eastman Chem. Co. v. Plastipure, Inc. & Certichem, Inc.,*
   2013 U.S. Dist. LEXIS 124340 (W.D. Tex. 2013).................................................16

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.,*
   711 F. Supp. 2d 1074 (C.D. Cal. 2010) ...............................................................3

*Edejer v. DHI Mortg. Co.,*
   2009 U.S. Dist. LEXIS 52900 (N.D. Cal. June 12, 2009) ......................................9

*Elcometer, Inc. v. TQC-USA, Inc.,*
   2013 U.S. Dist. LEXIS 51126 (E. D. Mich. Apr. 9, 2013)......................................5

*Germain v. J.C. Penney Co,*
   2009 U.S. Dist. LEXIS 60936 (C.D. Cal. July 6, 2009).........................................5

*Healthport Corp. v. Tanita Corp. of Am.,*
   563 F. Supp. 2d 1169 (D. Or. 2008) ...................................................................16

*Image Online Design, Inc. v. Internet Corp. for Assigned Names & Nos,*
   2013 U.S. Dist. LEXIS 16896 (C.D. Cal. Feb. 7, 2013)...............................24, 25

*Impeva Labs, Inc. v. Sys. Planning Corp.,*
   2012 U.S. Dist. LEXIS 120011 (N.D. Cal. Aug. 23, 2012)...................................19

*Infostream Group, Inc. v. Paupal, Inc.,*
   2012 U.S. Dist. LEXIS 122255 (E.D. Cal. Apr. 20, 2010).....................................21

*Int'l Union of Operating Eng'rs, Stationary Eng'rs Local 39 Pension Trust Fund v. Bank of N.Y.
Mellon Corp.,*
   2012 U.S. Dist. LEXIS 18281 (N.D. Cal. Feb. 14, 2012) .....................................16

*Irving v. Lennar Corp.,*
   2014 U.S. Dist. LEXIS 2184 (E.D. Cal. Jan. 6, 2014) .....................................18, 19

*Janda v. T-Mobile, USA, Inc.,*
   2009 U.S. Dist. LEXIS 24395 (N.D. Cal. Mar. 13, 2009).....................................15

*Jefferson v. Chase Home Fin.,*
   2008 U.S. Dist. LEXIS 101031 (N.D. Cal. Apr. 29, 2008) ...................................18

*John P. Villano Inc. v. CBS, Inc.,*
   176 F.R.D. 130 (S.D.N.Y. 1997) .........................................................................4

*Jones-Boyle v. Wash. Mut. Bank, F.A.,*
   2010 U.S. Dist. LEXIS 78208 (N.D. Cal. July 7, 2010).......................................20

*Midwest Canvas Corp. v. Commonwealth Canvas, Inc.,*
   2008 U.S. Dist. LEXIS 3576 (N.D. Ill. Jan. 16, 2008) .........................................17

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Case No.
4:14-cv-00437 CW

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co., LTD*,
    2007 U.S. Dist. LEXIS 59946 (N.D. Cal. Aug. 9, 2007)..........................................4

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ..........................................................................11

*Oracle Am., Inc. v. TERiX Computer Co.*,
    2014 U.S. Dist. LEXIS 561 (N.D. Cal. Jan. 3, 2014) ................................4

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
    2013 U.S. Dist. LEXIS 134317 (N.D. Cal. Sept. 19, 2013) ....................22

*Patel v. Pac. Life Ins. Co.*,
    2009 U.S. Dist. LEXIS 44105 (N.D. Tex. May 22, 2009) ......................13

*Priority Int'l Animal Concepts, Inc. v. Bryk*,
    2012 U.S. Dist. LEXIS 171132 (E.D. Wis. Dec. 3, 2012)...............4, 9, 10, 17

*Rowe v. Educ. Credit Mgmt. Corp.*,
    559 F.3d 1028 (9th Cir. 2009) .......................................................................3

*RPost Holdings, Inc. v. Trustifi Corp.*,
    2011 U.S. Dist. LEXIS 117260 (C.D. Cal. Oct. 11, 2011)......................13

*Shroyer v. New Cingular Wireless Servs.*,
    622 F.3d 1035 (9th Cir. 2010) .......................................................................3

*Swartz v. KPMG LLP*,
    476 F.3d 756 (2007)..........................................................................13

*Tempur-Pedic Int'l, Inc. v. Angel Beds LLC*,
    902 F. Supp. 2d 958 .....................................................................................4

*Thermal Design, Inc. v. Guardian Bldg. Prods.*,
    2009 U.S. Dist. LEXIS 36425 (E.D. Wis. Apr. 29, 2009)......................10

*Tidenberg v. Bidz.com, Inc.*,
    2009 U.S. Dist. LEXIS 21916 (C.D. Cal. Mar. 4, 2009)........................20

*True v. American Honda Motor Co.*,
    520 F. Supp. 2d 1175 (C.D. Cal. 2007) ......................................................8

*United States v. Hempfling*,
    431 F. Supp. 2d 1069 (E.D. Cal. 2006)........................................................8

*United States ex rel. Lee v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ......................................................................25

*Valu Eng'g, Inc. v. Nolu Plastics, Inc.*,
    732 F. Supp. 1024 (N.D. Cal. 1990) .........................................................15

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Case No.
4:14-cv-00437 CW

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

*VIP Prods., LLC v. Kong Co. LLC*,
  2011 U.S. Dist. LEXIS 3158 (D. Ariz. Jan. 12, 2011) ........................................15

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
  2010 U.S. Dist. LEXIS 47453 (E.D. Cal. Apr. 20, 2010).................................21, 22

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
  2012 U.S. Dist. LEXIS 109927 (C.D. Cal. July 31, 2012)................................3, 7, 8

*Wool v. Tandem Computers, Inc.*,
  818 F.2d 1433 (9th Cir. 1987) ........................................................................12

### STATE CASES

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ..........................................................................21, 22, 23

### FEDERAL STATUTES

Fed. R. Civ. P. Rule 8(a) ........................................................................13

Fed. R. Civ. P. Rule 9(b)...................................................................... *passim*

Fed. R. Civ. P. Rule 12(b)(6) ........................................................................3

Fed. R. Civ. P. Rule 15(a) ........................................................................25

### STATE STATUTES

California Business and Professions Code § 17204 ........................................20

California Business and Professions Code § 17535 ........................................20

California Code of Civil Procedures § 338(d) ................................................19

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Case No.
4:14-cv-00437 CW

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

1    Plaintiff Heartland Payment Systems, Inc. ("Heartland") submits this Opposition to

2    Defendant Mercury Payment Systems, LLC's ("Mercury") Motion to Dismiss the Complaint.

3    **I.    <u>INTRODUCTION</u>**

4    Contrary to Mercury's claims, Heartland is not attempting to use the Court to "endorse

5    Heartland's marketing pitch over any other," but to prevent Mercury from continuing to engage

6    in what Mercury <u>admits</u> are deceptive business practices.  Mercury contends that its practices

7    constitute only fraudulent billing, rather than false advertising, and that Heartland's claims

8    therefore fail.  But Mercury ignores Heartland's allegations that Mercury represents to merchants

9    that it will pass through network and interchange fees at cost, when Mercury in fact inflates those

10   fees <u>in addition to</u> billing its disclosed mark-ups.  Merchants rely on Mercury's representations,

11   engage Mercury's services in the belief that Mercury's pricing is competitive with Heartland's,

12   and are then charged far more than they expected to pay.  Promising one thing and delivering

13   another is exactly the type of false advertising that the Lanham Act and California's Unfair

14   Competition Law ("UCL") and False Advertising Law ("FAL") were designed to remedy.

15   Mercury proffers three general arguments for dismissing the Complaint, each of which

16   should be rejected.  Mercury argues that the Complaint does not properly allege false advertising,

17   that the Complaint does not allege facts with the required level of particularity under Rule 9(b),

18   and that Heartland lacks standing to bring its claims.   But Mercury's conduct constitutes

19   "advertising," even if Mercury does not use traditional television or print advertising campaigns,

20   because Mercury makes widespread false representations for the purpose of inducing merchants

21   into commercial transactions.  Heartland alleges the types of representations made, that they

22   were made in one-on-one communications to merchants, in Mercury's merchant application

23   which it provides to each merchant that it solicits, in its Operating Guide which is available on its

24   website, and in monthly billing statements.  The facts alleged are sufficiently detailed to enable

25   Mercury to respond to the claims, especially since Mercury is uniquely aware of the scope and

26   nature of its misrepresentations.  Heartland has standing, moreover, because merchants' reliance

27   on Mercury's false advertising and deceptive practices causes competitive injury to Heartland,

28   including damage caused throughout California.  Mercury's motion should be denied.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- 1 -

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.  Does Rule 9(b) apply to false advertising claims under the Lanham Act?

2.  Has Heartland alleged its claims with sufficient particularity to meet Rule 9(b)?

3.  Has Heartland alleged representations constituting false advertising or promotion?

4.  Has Heartland alleged facts sufficient to show it has standing under the UCL/FAL?

5.  Has Heartland stated claims for Intentional Interference with Prospective Economic Advantage and Intentional Interference with Contractual Relations?

## III.   STATEMENT OF FACTS

Heartland and Mercury both provide payment processing services, and compete for the business of small- and medium-sized merchants in the United States generally and in California specifically.  Compl., ¶¶ 8, 10, 11, 24.  In an attempt to combat a lack of transparency in the payment processing industry, Heartland and other companies use a form of pricing known as "interchange plus."  *Id.*, ¶¶ 16, 17.  The purpose of interchange plus pricing is to show the merchants what they are paying to the card issuing banks, the card brand networks, and the processor.  In interchange plus pricing, fees charged by the banks and card brand networks are broken out from fees charged by the payment processors and are passed through to merchants at cost.  *Id.*, ¶ 16.  The processor fees are identified separately and reflect the amount the processor is collecting for itself.  *See id.*

Mercury represents to merchants that it also uses interchange plus pricing, and defines that term to mean that interchange and network fees will be billed separately at cost.  *Id.*, ¶ 19. This should mean that Mercury passes through the bank and network fees at cost, while Mercury's fees (the "plus" part of "interchange plus") are separately identified.  Merchants thus believe that when Mercury tells them its discretionary fees are lower than Heartland's discretionary fees, they will ultimately be paying less when they engage Mercury's payment processing services.  However, this is not the case.  Mercury falsely advertises its billing structure as interchange plus -- through individual representations, its website, its Operating Guide, its merchant applications, and its invoices -- but instead of passing the interchange fees on to the merchant at cost, Mercury inflates those fees above what the card brand networks

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1  actually charge.  *See, e.g.*, *id.*, ¶ 18.  Merchants thus end up paying significantly more than they

2  were led to believe they would be charged when they engaged Mercury.  *Id.*, ¶ 23.  This conduct

3  constitutes actionable false advertising and unfair competition, and has resulted in tortious

4  interference with Heartland's contracts and prospective economic advantage.

5  **IV.   ARGUMENT**

6          A.      **In Ruling On The Motion, The Court Must Accept The Facts Pleaded As**
                        **True And Draw All Inferences In Heartland's Favor.**
7

8          The standard in ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules is

9  well settled.   The Court must accept Heartland's factual allegations as true and draw all

10 reasonable inferences from those allegations in Heartland's favor.  *Rowe v. Educ. Credit Mgmt.*

11 *Corp.*, 559 F.3d 1028, 1029-1030 (9th Cir. 2009); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th

12 Cir. 2013).  A Rule 12(b)(6) motion to dismiss is "proper only where there is no cognizable legal

13 theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Shroyer v.*

14 *New Cingular Wireless Servs.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

15         Mercury pays only lip service to this established standard.  Mercury's motion contains

16 liberal recitations of "facts" that are not pled, asks the Court either to ignore those facts that are

17 pled or to interpret them in a light most favorable to Mercury, argues that no reasonable

18 inferences should be drawn from the facts alleged, and actively misstates the law.  However, a

19 fair reading of the allegations of the Complaint under the applicable standards shows that

20 Heartland's Complaint passes muster under any applicable pleading standard.

21         B.      **No Circuit Court Has Ruled On Whether Rule 9(b) Applies To Lanham Act**
                        **False Advertising Claims.**
22

23         Mercury's broad assertion that Rule 9(b) applies to all of Heartland's claims is

24 overblown.  As Mercury's own authority states, "the Ninth Circuit has not concluded that Rule

25 9(b) applies to Lanham Act claims…"  *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,

26 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010); *see also W. Sugar Coop. v. Archer-Daniels-*

27 *Midland Co.*, 2012 U.S. Dist. LEXIS 109927, *9 (C.D. Cal. July 31, 2012) ("Courts are divided

28 on the issue of whether Rule 9(b) applies to false advertising claims…this Court has not found

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- 3 -

1  any circuit cases, including the Ninth Circuit, which addresses this issue."). Nor has any other

2  Circuit ruled on whether Rule 9(b) applies to Lanham Act false advertising claims.

3  Consequently, there is no binding authority requiring its application.

4      Within the Ninth Circuit, district courts are split on whether Rule 9(b) applies. While

5  some district courts apply Rule 9(b), others decline to do so, reasoning that since the Ninth

6  Circuit has not ruled on the issue, Lanham Act false advertising claims should be held to the

7  regular pleading standard. *See Oracle Am., Inc. v. TERiX Computer Co.*, 2014 U.S. Dist. LEXIS

8  561, *35-37 (N.D. Cal. Jan. 3, 2014) (declining to apply Rule 9(b) to a Lanham Act false

9  advertising claim in the absence of Ninth Circuit authority, even though other district courts

10  have); *Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*, 2008 U.S. Dist. LEXIS 109800,

11  *10 (N.D. Cal. Dec. 18, 2008) (same); *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. &*

12  *Tech. Dev. Co., LTD*, 2007 U.S. Dist. LEXIS 59946, *24 (N.D. Cal. Aug. 9, 2007) (same).

13      Numerous district courts in other circuits have similarly determined that Rule 9(b) is

14  inapplicable to Lanham Act false advertising claims because actual reliance and intent are not

15  elements of such claims. For example, in *Tempur-Pedic Int'l, Inc. v. Angel Beds LLC*, the court

16  noted that the Lanham Act prohibits false or misleading representations, but "makes no mention

17  of intent to deceive or defraud." 902 F. Supp. 2d 958, 965 (S.D. Tex. 2012). The court stated

18  that Rule 9(b) is often "reserved for claims predicated on statutes or common law that requires

19  some showing of scienter," and concluded that Lanham Act claims need not meet the

20  requirements of Rule 9(b). *Id.* at 966 (noting that all district courts within the Fifth Circuit that

21  had considered the issue had reached the same conclusion). *See also Priority Int'l Animal*

22  *Concepts, Inc. v. Bryk*, 2012 U.S. Dist. LEXIS 171132, *12-13 (E.D. Wis. Dec. 3, 2012) (a

23  business injured by false advertising should not be deprived of a remedy "simply because it has

24  yet to discover all of the details as to who is responsible and whether they acted with intent or

25  not, especially since these facts are not even material to the claim."); *John P. Villano Inc. v. CBS,*

26  *Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) ("a claim of false advertising under the Lanham

27  Act…is not identical to a claim of fraud. Fraud requires…a specific intent to harm the victim

28  and defraud him of his money or property….Consequently, a claim of false advertising under §

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1125…falls outside the ambit of Rule 9(b)"); *Elcometer, Inc. v. TQC-USA, Inc.*, 2013 U.S. Dist. LEXIS 51126, *12-13 (E. D. Mich. Apr. 9, 2013) ("TQC fails to provide the Court with any controlling authority from this Circuit applying the particularity standards of Rule 9(b) to allegations of false advertising or unfair competition.  This is because this is not the law.").

While Rule 9(b) may apply to Heartland's Business & Professions Code claims, it is not required for the Lanham Act claim.

## C.   The Allegations Of The Complaint Are Pled With Sufficient Particularity To Satisfy Rule 9(b)'s Heightened Pleading Requirement.

Heartland has stated a claim on each cause of action regardless of what pleading standard applies.  The purpose of Rule 9(b)'s heightened pleading requirement is to allow defendants to know what the allegations against them are, and to respond meaningfully to those allegations. *See, e.g., Germain v. J.C. Penney Co*, 2009 U.S. Dist. LEXIS 60936, *12 (C.D. Cal. July 6, 2009) ("[T]he Court concludes that plaintiffs have met the heightened pleading standard of Rule 9(b).  Plaintiffs have sufficiently identified 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'").  Heartland's Complaint alleges facts that are sufficient to allow Mercury to respond.

### 1.   The Complaint Alleges Actionable False Statements In Commercial Advertising And Promotion With Sufficient Particularity.

Contrary to Mercury's arguments, the Complaint alleges the specific content of Mercury's representations, what is false about them, and why they are false.  The Complaint also sufficiently alleges who made the representations, and when and where they were made.

Mercury represents to merchants whose business it solicits that Mercury will pass network and interchange fees through at cost, and will charge an additional, disclosed, mark-up.  Compl., ¶ 18.  Mercury makes these representations in merchant applications in which Mercury discloses the pricing structure that will be applied to the merchant should the merchant engage Mercury's services.[1]  *Id.*, ¶ 19.  Mercury also makes these representations in its merchant

---

[1]   When Heartland filed its Complaint, Heartland did not have copies of Mercury merchant applications, but had been informed of their content.  Since filing, Heartland has been contacted

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Operating Guide, which is available on Mercury's website, and quotes representations from that Operating Guide that interchange and network fees are fees set and charged by the issuing banks and card brand networks and will be "billed separately" to merchants. *Id.*, ¶ 21. Mercury's agents, the POS providers that Mercury partners with and pays to promote Mercury's services, tell merchants that interchange and network fees are charged by banks brand networks and that Mercury passes those fees through at cost. *Id.*, ¶ 19. Mercury's monthly statements to its merchants perpetuate these representations in that they show line-item charges which purport to be the interchange and network fees charged by the banks and card brands, but in fact have been inflated by Mercury. *Id.*, ¶ 32. Heartland alleges that Mercury has been making these misrepresentations since at least 2008, and that making such misrepresentations had become a widespread practice of Mercury's by 2011, if not before. *Id.*, ¶¶ 27, 22.

Heartland also alleges what is false about Mercury's representations, and why they are false: contrary to Mercury's representations that it would pass through network and interchange fees at cost, Mercury inflated those fees unbeknownst to the merchants. *See e.g., id.*, ¶¶ 18, 19, 22, 27-29. Heartland alleges that a sampling of Mercury statements shows that Mercury inflated those fees, contrary to its representations, to at least 75% of the merchants to which it provides processing services. *Id.*, ¶ 33.[2]

To further explain the falsity of Mercury's representations regarding how it bills interchange and network fees, Heartland alleges a specific example in which Mercury falsely advertised its billing practices to a merchant. *Id.*, ¶¶ 26-29. In 2008, a California-based restaurant chain, who was then using Heartland's services, decided to bid out to various payment

---

by merchants who confirmed Heartland's allegations and provided copies of Mercury merchant applications. The applications represent that Mercury will charge interchange and network fees <u>at cost</u>, just as Heartland alleged. *See* Decl. of Frank A. Cialone ISO Opp. To Mot. To Transfer, Ex. D. Should Mercury's motion to dismiss be granted, Heartland should be given leave to amend to include these and other facts that Heartland has learned since filing.

[2] Mercury claims that the allegations of falsity are inadequate because Heartland does not allege that the payment processing industry, including merchants, subscribes to Heartland's definition of "interchange plus" pricing, or that merchants understand "interchange fees" to include card network fees. But Heartland alleges that Mercury and its agents describe "interchange fees" as the "fees charged by the issuing banks and card brands and that Mercury passes those fees through at cost." Compl, ¶ 19.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

processing companies; both Heartland and Mercury submitted bids. *Id.*, ¶ 26. Heartland's bid stated that it would charge its costs -- interchange and network fees -- plus 7 cents per transaction, while Mercury's bid stated it would charge its costs plus 6.5 cents per transaction. *Id.*, ¶ 27. The restaurant chain switched to Mercury, expressly stating that it had done so because of Mercury's better rates. *Id.* However, in November 2013, Heartland discovered that Mercury, in addition to charging 6.5 cents per transaction, had falsely inflated its costs by another 4 cents per transaction. *Id.*, ¶¶ 28-29. As a result, Mercury actually charged its costs plus 10.5 cents per transaction, far more than it represented it would do, and far more than what Heartland would have charged.[3] *Id.*

The Complaint therefore has sufficiently alleged the <u>who</u> (by Mercury and its POS partners), the <u>what</u> (representations that Mercury will pass through network and interchange fees at cost), the <u>where</u> (in sales presentations, merchant applications, Mercury's website and Operating Guide, monthly statements, and bids to merchants), the <u>when</u> (since at least 2008 and on a widespread basis by 2011), and the <u>how</u> (contrary to Mercury's representations to pass through interchange and network fees at cost, it instead inflates them.).

These allegations satisfy Rule 9(b)'s particularity requirement. Similar, but far less detailed allegations have been found to satisfy Rule 9(b). In *W. Sugar Coop.*, a Lanham Act false advertising case in which the court applied Rule 9(b), the complaint alleged that certain defendants used "spokespersons to disseminate the advertising theme that [high fructose corn syrup] is no different than sugar," that certain defendants used the offending phrase "corn syrup" in "presentations, annual reports, pricing sheets, and other communications directed to customers and investors;" and that other defendants used the offending phrase in "pricing sheets and other communications." 2012 U.S. Dist. LEXIS 109927 at *13-14. The court denied a motion to

---

[3] Mercury argues that what it charged in 2013 is not connected to what it promised to charge in 2008, implying that it may have since raised its prices. This argument misstates the Complaint and relies on "facts" not pled. A fair reading of the Complaint shows that Mercury represented to the merchant that it would charge 6.5 cents per transaction plus costs, when Mercury in fact charged 6.5 cents, plus costs, plus an additional, hidden mark-up of those costs, and has been doing so since 2008. Compl., ¶¶ 27-28. The facts actually pled and the inferences that must be drawn therefrom show falsity: that Mercury did not bill this merchant as it advertised it would.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1    dismiss, finding that the allegations of use of spokespersons and use of the phrase in "documents

2    and communications" was sufficient to inform the defendants of their alleged false advertising.

3    *Id.* at \*14.[4]   Heartland's allegations are sufficient under Rule 9(b) and enable Mercury to respond

4    to the claims.

### 2.       Rule 9(b) Is Less Stringently Applied Where The Factual Details Are Uniquely Known To The Defendant.

7           Mercury wrongly contends that Rule 9(b) creates a pleading standard that would be

8    impossible to meet, arguing that Heartland must allege each specific statement made to each

9    merchant to whom Mercury promised to pass through interchange and network fees at cost

10   (which likely number in the thousands), and the specific individuals who made those statements

11   within Mercury or on Mercury's behalf.  Rule 9(b) does not require that level of detail.  Less

12   particularity is required under Rule 9(b) when, as in this case, such detailed facts are uniquely

13   known to the defendant.  *See e.g., Arch Ins. Co. v. Allegiant Prof'l Bus. Servs.*, 2011 U.S. Dist.

14   LEXIS 58261, \*17-19 (C.D. Cal. May 23, 2011) ("[P]laintiff has pleaded its claim with the

15   requisite particularity, as more specific facts regarding the allegedly false representations were,

16   at the time of the filing of the complaint, uniquely in the possession of defendants.").  Similarly,

17   when, as in this case, the false representations are widespread and made over time, "Rule 9(b)'s

18   requirement that the circumstances of fraud to be stated with particularity are less stringently

19   applied."  *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1075 (E.D. Cal. 2006).

20          Mercury argues that pleading the specifics of each false representation should be possible

21   because advertisements are by nature publicly available.  But Mercury wrongly assumes that

---

[4]  *See also True v. American Honda Motor Co.*, 520 F. Supp. 2d 1175, 1183 (C.D. Cal. 2007)
(finding allegations met the Rule 9(b) standard where the allegations consisted only of the time
period ("between March 1, 2003 and March 1, 2007"), the advertising method ("in print and on
the Internet"), the people who viewed the advertising ("consumers"), the location of the
advertising ("throughout the United States"), and the content of the advertising ("statements of
its fuel efficiency and the prospective cost savings to the consumer that were up to 53 percent
below actual figures, while omitting or softening the '[a]ctual mileage will vary' disclaimer"));
*Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1084 (D. Minn. 2007) (plaintiff
"has pleaded the who [the Defendants], what [false advertising], where [in ads targeted to drug
databases, wholesalers, and pharmacies], when [since the late 1990's], and how [falsely claiming
their drugs are generic equivalents or substitutes]."(bracketed words in original)).

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1   false advertising claims can only rest on large-scale TV or print advertising campaigns.  Here,

2   while some of the false statements were publicized on Mercury's website (and quoted in the

3   Complaint), Heartland's claims are also based on direct communications between Mercury or its

4   agents and merchants.  Such one-on-one solicitations, which Heartland alleges Mercury made to

5   many of the approximately 76,000 merchants it serves (*see* Compl., ¶¶ 20, 22-23, 33), also

6   constitute advertising.  *See* Section IV.D.1, *infra*.  Unlike Mercury, Heartland was not a party to

7   these communications.  Thus, Mercury is uniquely in possession of the details regarding the false

8   statements, whereas Heartland is not.

9          Once again, Rule 9(b) requirements are less stringent under these circumstances.  For

10  example, the court in *Priority Int'l Animal Concepts* found that Rule 9(b) was satisfied (even

11  though the court found it did not apply) in a false advertising case against a corporate defendant,

12  where the plaintiff alleged that "since September 2011, the defendants 'made, published,

13  disseminated, circulated, or otherwise placed before the public an advertisement, announcement,

14  statement, or representation 'asserting that the defendants' . . . products were identical to [the

15  plaintiff's] products and could be used in place of the [plaintiff's] products" and that the

16  defendants disseminated this to customers and potential customers in the New York, Virginia,

17  and Ohio geographic regions.  2012 U.S. Dist. LEXIS 171132 at *12-13.  In reaching this

18  conclusion, the court stated that "[o]ther courts have noted that the particularity requirement

19  'must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim.'"  *Id.*

20  (citation omitted).  The court further held that "false advertising claims under the Lanham Act do

21  not require such specificity as to the recipients of the advertisement."  *Id.* at *16.

22         The cases on which Mercury relies for its argument that Heartland must identify each

23  person that made the false statements in question are inapposite because they each concern a

24  plaintiff subject to a single false representation, made to the plaintiff by a specific individual, so

25  that the plaintiff presumably could have alleged, but did not allege, the name of that individual.

26  *See Edejer v. DHI Mortg. Co.*, 2009 U.S. Dist. LEXIS 52900, *33-34 (N.D. Cal. June 12, 2009);

27  *Diaz v. Bank of Am. Home Loan Servicing*, 2010 U.S. Dist. LEXIS 143885, *3 (C.D. Cal. Dec.

28  16, 2010).  Rule 9(b) does not impose any such requirement where, as here, the information is

- 9 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

within the defendant's possession and can only be obtained through discovery.  For example, the court in *Thermal Design, Inc. v. Guardian Bldg. Prods.,* 2009 U.S. Dist. LEXIS 36425 (E.D. Wis. Apr. 29, 2009), found that a false advertising claim met the heightened particularity requirement by pleading:

> the party responsible for various commercial representations, where they were made (in brochures and fliers displayed on the internet and at trade shows), when they were made (variously between 2006 and 2008), and how the advertisements were false or fraudulent (by claiming that their competing products meet certain specifications which are met by Thermal Design's products).

*Id.* at *8.  While the plaintiff did not allege "the particular individual who created or communicated the allegedly false advertisements," the court noted it would be "difficult if not impossible at the pleading stage for a plaintiff to identify who created or transmitted an advertisement beyond the company or entity that is ultimately responsible."  *Id.* at *9.  *See also Priority Int'l Animal Concepts, Inc.*, 2012 U.S. Dist. LEXIS 171132 at *12, 15-16 (the specific personnel involved in creating the false advertisement within the corporate structure will "typically be unknown, absent discovery" so the plaintiff's failure to identify a particular person not fatal to its complaint, even under Rule 9(b)).

Similarly, in *Am. Specialty Health Group, Inc. v. Healthways, Inc.*, the court did not require plaintiffs to list the names of the 62 facilities that were alleged to have been falsely advertised in order to satisfy Rule 9(b).  2012 U.S. Dist. LEXIS 147522, *20 (S.D. Cal. Oct. 12, 2012).  The plaintiff's allegations were sufficient to put the defendant on notice of its allegedly fraudulent conduct and to formulate defenses, and knowing the names of the facilities was not necessary, given that the online directory in which the facilities were advertised was in defendant's exclusive control.  *Id.* at *20-21.

Heartland is in the same position contemplated in *Thermal Design*, *Priority Int'l Animal Concepts, Am. Specialty Health Group,* and *W. Sugar Coop.* (discussed above).  Heartland cannot identify each Mercury employee or agent who, for example, sent a merchant application that falsely assured a merchant that Mercury would charge interchange rates and assessments at cost; only Mercury has that information now.  Rule 9(b) simply does not require the extreme specificity that Mercury demands.  The purpose of the rule is to ensure that defendants have

- 10 -

1   enough information to respond to the claims against them, a standard that Heartland meets. The

2   rule was not intended to create a pleading standard that no plaintiff claiming widespread false

3   advertising could meet. Heartland has sufficiently alleged when the representations were made

4   (beginning as early as 2008, becoming widespread by 2011, and continuing to the present,

5   Compl., ¶¶ 26, 22), the form they took (in sales presentations, merchant applications, Mercury's

6   website and Operating Guide, monthly invoices, and bids, *id.*, ¶¶ 19, 20, 21, 30, 33), to whom

7   they were made (the merchants Mercury solicits, *id.*, ¶ 20), who made them (Mercury and the

8   POS providers with which it partners), *id.*, ¶¶ 18, 19), and as explained above, the content of the

9   representations, including why they are false. Heartland's Complaint satisfies Rule 9(b).

### 3.      Allegations Founded On Information And Belief Are Permissible.

11          Mercury also argues that Heartland's allegations do not satisfy Rule 9(b) because certain

12   of them are "improperly" based on information and belief. As explained above, Mercury's

13   assertions that Heartland must have had access to each of its false statements because they were

14   "made in advertisements disseminated to the public" is specious. Heartland alleges that many of

15   the relevant facts, including the advertisements, were not disseminated to the public at large, but

16   rather on an individual, albeit widespread, basis to the <u>relevant purchasing public</u>: small to

17   medium-sized merchants. Heartland did not have personal knowledge of these direct

18   solicitations, but made them on "information and belief" -- *i.e.*, "based on secondhand

19   information that the declarant believes to be true" -- including information provided by the

20   merchants themselves. *See* Black's Law Dictionary 849 (9th ed. 2009).

21          All of the cases Mercury cites make clear that pleading on information and belief is

22   appropriate, even where Rule 9(b) applies, when the plaintiff does not have personal knowledge

23   of the facts because they are uniquely in possession of the defendant. *Adobe Sys. v. Coffee Cup*

24   *Partners, Inc.*, 2012 U.S. Dist. LEXIS 127602, *39 (N.D. Cal. Sept. 6, 2012) (Wilken, J.) ("[A]s

25   to matters peculiarly within the opposing party's knowledge, allegations based on information

26   and belief may satisfy Rule 9(b) if they also state the facts upon which the belief is founded.");

27   *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[T]he general rule that allegations of

28   fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- 11 -

1   matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected

2   to have personal knowledge of the relevant facts."); *Wool v. Tandem Computers, Inc.*, 818 F.2d

3   1433, 1439 (9th Cir. 1987) (same).

4       Here, Mercury has unique access to all of the relevant facts alleged on information and

5   belief.  Mercury's false representations, that it would pass through interchange and network fees

6   at cost, were directed to merchants, not to Heartland, and Mercury knows the merchants to which

7   it disseminated these false representations.  Heartland does not merely allege vague suspicions

8   without basis; the Complaint provides ample factual support for Heartland's claims based on

9   information it discovered by speaking with merchants and reviewing Mercury's statements to

10  merchants. *See, e.g.*, Compl., ¶¶ 22, 25, 33, 34.  These allegations are sufficient under Rule 9(b).

11
      **4.**      **The Complaint Sufficiently Alleges False Statements Made By**
12
              **Mercury And Repeated By Its Agents -- Its POS Partners.**

13      Mercury claims that Heartland fails to plead with the requisite particularity because

14  Heartland alleged that the false statements were made not just by Mercury, but also by agents of

15  Mercury.  Mercury argues that Heartland has not sufficiently pled an agency relationship

16  between Mercury and any one of the "thousands of dealers" that refer business to Mercury.

17      Heartland has alleged with particularity Mercury's role in the false advertisements, and

18  explained that the impetus for the false statements came from Mercury. *See e.g.*, Compl., ¶ 19.

19  Heartland further alleges that Mercury's POS partners, who act as Mercury's agents and sell

20  services on Mercury's behalf, confirm to potential merchants Mercury's representations that

21  interchange fees are fees charged by the issuing banks and card brands and that Mercury passes

22  those fees through at cost. *Id.*, ¶¶ 19, 15.  These facts are sufficient to show an agency

23  relationship, even under Rule 9(b), given that Mercury is uniquely in possession of the requisite

24  facts. *See Adobe Sys.*, 2012 U.S. Dist. LEXIS 127602 at *39.  Mercury knows which of its POS

25  partners it informed that it passed through interchange fees at cost, and Mercury can identify the

26  merchants to which those POS Partners sold Mercury's services.[5]

27
28
    —————————
    [5]  While Mercury appears to dispute in its Motion to Dismiss that POS dealers act as Mercury's agents, Mercury acknowledges in its concurrently-filed Motion to Transfer Venue that it

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Case No.
4:14-cv-00437 CW

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

In any event, where, as here, the agency relationship is not part of the fraud itself, the agency relationship does not need to be alleged with Rule 9(b) particularity.  *Patel v. Pac. Life Ins. Co.*, 2009 U.S. Dist. LEXIS 44105, *35-36 (N.D. Tex. May 22, 2009).  The *Patel* court stated that in cases where the agency relationship was properly required to be alleged with particularity, it was because the agency itself was a fraud and the defendants were creating a false appearance of agency in order to facilitate their overall fraudulent scheme.  *Id.*  The court reasoned that when the agency relationship was not so intertwined with the fraud allegation as to be part of the fraud itself, plaintiffs only needed to satisfy Rule 8(a).  *Id.*

Like the defendant in *Patel*, Mercury does not need particularized allegations of the agency relationship in order to understand and respond to Heartland's claims against it.  Unlike in the cases cited by Mercury, *RPost Holdings* and *Swartz*, Heartland's Complaint alleges misconduct perpetrated directly by Mercury, which is the primary basis of Heartland's claims.[6]  The agency relationship is not part of the alleged fraudulent conduct, but simply another way in which Mercury disseminates its false advertising.  Heartland alleges that Mercury makes its false representations directly through merchant applications and other promotional communications, and also through its agents.  Compl., ¶ 19.  Heartland has met the applicable pleading standards.

### D.      The Alleged False Statements Constitute Advertising And Promotion.

Heartland has also sufficiently alleged actionable statements constituting advertising or promotion for purposes of the Lanham Act, FAL, and UCL.[7]  Mercury peppers its motion with

distributes its services through those dealers, with whom it "works closely" and whom Mercury "incentivizes" through "commissions."  Motion to Transfer at 3.

[6] In both cases cited by Mercury, agency theory was the only "hook" by which the plaintiffs got the relevant defendants into the cases.  In *RPost Holdings*, plaintiffs alleged a series of false representations made by Trustifi (also a defendant), and no false representations made by USPS.  However, the plaintiff sought to hold USPS liable for Trustifi's representations simply by asserting that Trustifi was the agent of USPS because of a "strategic alliance," and no more.  *RPost Holdings, Inc. v. Trustifi Corp.*, 2011 U.S. Dist. LEXIS 117260, *9 (C.D. Cal. Oct. 11, 2011).  USPS's role in the false statements was not explained by plaintiffs.  Similarly, in *Swartz*, the plaintiffs alleged specific false representations only by two of the defendants; it sought to hold the other two defendants liable for that misconduct simply by asserting that they were acting as agents of the first two defendants.  *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (2007).

[7] Heartland's UCL claim is broader than just false advertising.  Even if the Court were to find that the representations do not constitute advertising, Mercury's alleged conduct still meets the unlawful, unfair, and fraudulent prongs of the UCL.  Mercury has not argued otherwise.

unsupported assertions that advertising is necessarily public, but Mercury misstates the very test that it cites.  To constitute "commercial advertising or promotion" under the Lanham Act, a statement must be: "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.  <u>While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,'</u> the representations (4) must be disseminated sufficiently to the <u>relevant purchasing public</u> to constitute 'advertising' or 'promotion' within that industry."  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (emphasis added).

The test stated in *Coastal Abstract* does not require dissemination to the public generally.  It requires a sufficient level of dissemination to the "relevant purchasing public."  Here, the relevant purchasing public was small to mid-sized merchants in the market for payment processing services.  To suggest Heartland's complaint fails to allege advertising because Heartland could not turn on the television or pick up a newspaper and locate Mercury's false advertising misstates the law.  As Mercury concedes, neither Mercury nor Heartland employ "traditional" advertising, instead relying on individual representations made to individual merchants in need of payment processing services.  Motion to Dismiss at 4-6.

Each of the forms in which Heartland alleges Mercury misrepresented to merchants that it passes through network and interchange fees at cost, when it instead inflates those fees, constitutes advertising or promotion.  These representations are made by Mercury to potential customers in order to solicit the customers' business.  Accordingly, they constitute commercial speech, by a competitor, for the purpose of influencing the customer to purchase the defendant's services.  The representations are sufficiently disseminated to the purchasing public, as the Complaint alleges they have been made on a widespread basis since 2011.  Compl., ¶ 22.

### 1.    Statements To Merchants Constitute Advertising.

Heartland has alleged that Mercury represents to merchants, either directly or through its POS partners, that it will charge them bank and card network fees at cost.  Compl., ¶¶ 18-19, 21, 27.    Courts   have   recognized   that   such   individual   representations   to   customers   constitute

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

advertising and can serve as the basis of a false advertising claim.  In *Avon Prods. v. S.C. Johnson & Son*, then-District Court Judge Sotomayor concluded that representations made by Avon sales representatives to potential customers about the qualities of a product were false advertising, even though Avon did not disseminate its false message through traditional advertising.  984 F. Supp. 768, 795-796 (S.D.N.Y. 1997).  Because Avon's business relied "exclusively upon promotion by its sales representatives," evidence of individualized representations was sufficient to show advertising under the Lanham Act.  *Id.* at 796.  *See also Valu Eng'g, Inc. v. Nolu Plastics, Inc.*, 732 F. Supp. 1024, 1025 (N.D. Cal. 1990) (finding likelihood of success on the merits of false advertising claim where salespeople made false representations in individual presentations); *Daghlian v. DeVry Univ., Inc.*, 2007 U.S. Dist. LEXIS 97797, *26-27 n.29 (C.D. Cal. Dec. 10, 2007) (an individual statement made only to the plaintiff falls within the definition of false advertising); *VIP Prods., LLC v. Kong Co. LLC*, 2011 U.S. Dist. LEXIS 3158, *5, 8-9 (D. Ariz. Jan. 12, 2011) (allegations that defendant "repeatedly" made false assertions to industry participants at trade shows sufficient for a false advertising claim); *In re Conn. Mobilecom, Inc.*, 2003 U.S. Dist. LEXIS 23063, *31-33 (S.D.N.Y. Dec. 23, 2003) (allegations identifying a handful of individuals to whom misrepresentations were made, out of a market of millions, sufficient for a false advertising claim).  Mercury's widespread representations to merchants constitute actionable advertising.

### 2.    Merchant Applications Constitute Advertising.

Heartland has alleged that Mercury's merchant applications contain false advertising.  Compl., ¶ 19.  Courts have found statements made in applications for services, including statements regarding price, to constitute advertising.  *See Janda v. T-Mobile, USA, Inc.*, 2009 U.S. Dist. LEXIS 24395, *16-19 (N.D. Cal. Mar. 13, 2009) (applying Rule 9(b) and finding defendant's practice of representing to consumers the monthly fee, charge or price of service in its Service Agreement constituted advertising).  Mercury's claim that the Complaint provides "*zero*" detail on the merchant applications is simply untrue.  Heartland has alleged that, in these applications disclose "the pricing that will be applied to a particular merchant as being on an interchange or cost-plus basis."  Compl., ¶ 19.  Those applications are commercial speech, made

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

for the purpose of influencing merchants' purchasing decisions by falsely representing what Mercury will charge.  They are disseminated widely, to all merchants considering doing business with Mercury.  *Id.*, ¶¶ 19-20.  To argue that this is not commercial speech is ludicrous.

### 3.    Mercury's Operating Guide Constitutes Advertising.

Heartland has also alleged that Mercury's Operating Guide, which is accessible from Mercury's website, contains false advertisements.  Compl., ¶ 21.  The Complaint quotes the specific language at issue, in which Mercury explains that network and interchange fees are charged by the banks and card brands, and will be billed separately.  *Id.*  Mercury argues that its Operating Guide does not constitute advertising because it is for existing merchants.  However, the Operating Guide can be accessed from Mercury's website, and is available to the general public and to any merchant considering doing business with Mercury.  *Id.,* ¶¶ 20-21.

The court in *Am. Specialty Health Group* considered and rejected an argument virtually identical to Mercury's.  In that case, the defendant argued that an online directory of in-plan fitness locations could not be a commercial advertisement because it was intended to provide information for existing program members, not to propose a commercial transaction.  2012 U.S. Dist. LEXIS 147522 at *14.  The court rejected this argument because the online directory was on the defendant's website, and anyone could access it without logging in as a member.  *Id.*  Mercury's Operating Guide is similarly published on Mercury's website and accessible to anyone, and thus similarly constitutes advertising.[8]

The fact that the Operating Guide is long, or that the statements Heartland quotes are separated by a number of pages, does not support Mercury's argument that the representations do

---

[8]  Courts frequently find that material published on company websites constitutes advertising. *See, e.g., Int'l Union of Operating Eng'rs, Stationary Eng'rs Local 39 Pension Trust Fund v. Bank of N.Y. Mellon Corp.*, 2012 U.S. Dist. LEXIS 18281, *13-15 (N.D. Cal. Feb. 14, 2012) (statements about trading being made according to "best execution standards" and terms and charges of trading, made in written procedures and on defendants' websites, constituted false advertising); *Healthport Corp. v. Tanita Corp. of Am.*, 563 F. Supp. 2d 1169, 1178-1179 (D. Or. 2008) (statements on company websites advertising where the sites were created to sell services, and were accessible to the public); *Eastman Chem. Co. v. Plastipure, Inc. & Certichem, Inc.*, 2013 U.S. Dist. LEXIS 124340, *13 (W.D. Tex. 2013) (website statements advertising where they were "clearly designed to bolster Defendants' image and reaffirm Defendants' primary business strategy").

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Case No.
4:14-cv-00437 CW

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

1   not constitute advertising.  The Operating Guide is promotional material that Mercury places on

2   its website, which is likely to deceive merchants about how Mercury charges for its services.

3        Mercury's argument that the quoted representations from the Operating Guide are

4   innocuous is equally unavailing.  Mercury <u>admits</u> that it inflates the fees that are charged by card

5   brands, as Heartland has alleged.  But Mercury's Operating Guide states that these fees are

6   charged by the card brands, and are billed separately from Mercury's own mark-up.  Compl, ¶

7   21.  The gross misrepresentation that a fee Mercury intends to inflate -- by up to 300% (*see id*., ¶

8   22) -- is merely the fee that the card brand is charging Mercury is hardly "innocuous."

9        Finally, Heartland does not need to allege that any particular merchant actually read the

10  statements to state a claim for false advertising.  *Priority Int'l Animal Concepts, Inc.*, 2012 U.S.

11  Dist. LEXIS 171132 at *16 ("[F]alse advertising claims under the Lanham Act do not require

12  such specificity as to the recipients of the advertisement.  Advertisements by their very nature are

13  directed to an anonymous public audience."); *see also In re Conn. Mobilecom, Inc.*, 2003 U.S.

14  Dist. LEXIS 23063 at *31-33 (widespread dissemination does not require a plaintiff to identify

15  the exact number or the identity of each person to whom the misrepresentations were made).

16  Heartland has alleged that the representations are likely to deceive merchants in that they lead

17  merchants to believe that Mercury will only charge actual interchange fees, without an

18  undisclosed markup, and that allegation is sufficient.

19         **4.**      **The Monthly Billing Statements Constitute Advertising.**

20       Mercury's monthly statements to merchants contain false advertising because they

21  purport to pass through interchange fees at cost, when in fact Mercury has inflated those fees.

22  Compl., ¶¶ 22, 33.  Mercury argues that such statements are not advertising because they

23  memorialize past transactions, as opposed to proposing a future commercial relationship.  But

24  Mercury relies for this argument on a case that involved a discrete transaction between

25  competitors (that occurred after the filing of the initial complaint), rather than an ongoing

26  commercial relationship.  *See Midwest Canvas Corp. v. Commonwealth Canvas, Inc.*, 2008 U.S.

27  Dist. LEXIS 3576, *3-5 (N.D. Ill. Jan. 16, 2008).  In contrast, the monthly statements here not

28  only memorialize past transactions but also induce merchants to continue processing payments

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

- 17 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

through Mercury. *Jefferson v. Chase Home Fin.*, 2008 U.S. Dist. LEXIS 101031, *48-51 (N.D. Cal. Apr. 29, 2008) (representations made in monthly statements to existing customers were advertising under the FAL because they were made "to consumers, in documents likely to induce them to send their money to Chase").

On the monthly statements, Mercury has falsely characterized charges that Mercury inflated as being merely the pass-through of fees imposed by the banks and card brands. Merchants who do not realize they have been overcharged are far more likely to continue processing with Mercury than merchants who know the truth, and the merchant statements are thus part of Mercury's efforts to promote the continued use of its services to merchants.

### 5.     A "Rate Match Guarantee" Is Not Puffery.

Mercury claims on its website that it offers a "Best Rate Promise" or a rate match guarantee. Compl., ¶ 31. Mercury argues that these allegations are not advertising, but instead constitute non-actionable puffery. However, all of Mercury's cited authority concerns "general assertions of superiority," such as a claim to have the "best prices." A rate match guarantee is not a general assertion of superiority, but rather a "specific factual assertion" upon which a reasonable consumer could rely. *See Cook, Perkiss & Liehe, Inc. v. Nor. Cal. Collection Service, Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). A rate match guarantee is actionable, because it promises a specific, measurable action. *See Irving v. Lennar Corp.*, 2014 U.S. Dist. LEXIS 2184, *24-25 (E.D. Cal. Jan. 6, 2014) (promise not to sell homes to high risk investors not puffery). Mercury advertises that it will match or beat competitors' prices, when in fact Mercury charges more than its competitors, including Heartland, by disguising its additional charges as interchange and network fees. Such conduct constitutes actionable false advertising.

### 6.     Mercury's 2008 Bid Constitutes Advertising.

Heartland has alleged that in 2008 Mercury out-bid Heartland for the business of a California-based restaurant chain by falsely representing that it would charge costs plus 6.5 cents per transaction, but then secretly inflating the costs, resulting in the merchant being charged 10.5 cents per transaction. Compl., ¶¶ 26-28. Mercury argues its statements to this merchant have

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

"nothing to do" with advertising.[9]  As explained in Section IV.D.1, *supra*, courts have found that individual statements to potential customers constitute advertising.  Moreover, false statements made in a competitive bid environment constitute advertising, even if there is only one customer.

In *Impeva Labs, Inc. v. Sys. Planning Corp.*, the plaintiff and defendant each responded to a customer's request for proposal.  2012 U.S. Dist. LEXIS 120011, *2 (N.D. Cal. Aug. 23, 2012).  The complaint alleged that during the competitive bid process, the defendant falsely informed the customer that plaintiff's products and services would infringe defendant's patents.  *Id.* at *11.  The defendant moved to dismiss, arguing that such a statement could not constitute advertising under the Lanham Act.  *Id.* at *9.  The court found that the statements constituted advertising, stating that one potential buyer and many potential sellers was no less a marketplace than a more traditional marketplace with one potential seller and many potential buyers.  *Id.* at *11.  The court further noted that because there was only one potential buyer in a competitive bid situation, statements made to that buyer constituted sufficient dissemination.  *Id.* at n.2.

The situation between Mercury, Heartland, and the California restaurant chain is closely analogous.  Even if the statements that Mercury made in 2008 fall outside its organized, mass-campaign of individual advertising, they are advertising because the California restaurant chain put out a request for bids and thus created its own mini-marketplace.[10]  Within that marketplace, Mercury's statements as to its pricing (falsely represented to be lower than Heartland's prices) were commercial speech made for the purpose of inducing the restaurant to select it as the winner of the bid process, and were sufficiently disseminated to constitute advertising.

---

[9]  Mercury suggests in a footnote that the 2008 bid is barred by the statute of limitations.  However, Heartland had no reason to know of the deception until November 2013 when it was first provided one of Mercury's invoices to the merchant.  As the Complaint explains, Mercury's false advertisements were made to merchants, not to Heartland.  Code Civ. Proc. § 338(d) (fraud claim does not accrue "until the discovery, by the aggrieved party…of the facts constituting the fraud"); *see Dodson v. Tempur-Sealy Int'l, Inc.*, 2014 U.S. Dist. LEXIS 54071, *28-30 (N.D. Cal. Apr. 16, 2014) (applying the discovery rule to false advertising claims).

[10]  Mercury provides no reason that just because a representative piece of false advertising might predate a flood of similar false advertising, that the frontrunner should be disregarded.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Case No.
4:14-cv-00437 CW

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

E. **Heartland Has Standing To Bring Its UCL and FAL Claims.**

Standing under the UCL and the FAL is conferred on "any person who has suffered injury in fact and has lost money or property" as a result of the false advertising or otherwise unfair competition. Bus. & Prof. Code § 17204 and § 17535. Heartland alleges false advertising and other wrongful conduct in California that caused competitive injury to Heartland in California. Accordingly, Heartland has standing under both the UCL and FAL.

1. **The Complaint Alleges False Advertisements Made In California.**

Heartland has standing under both the UCL and the FAL because it has alleged wrongful conduct by Mercury in California, specifically false advertising directed at California merchants, which harmed the merchants and caused injury to Heartland in California. Compl., ¶¶ 22, 26.

Unlike the cases Mercury cites, Heartland actually alleges that harmful false advertising occurred in California.[11] Mercury and Heartland both offer processing services in California, as Mercury acknowledges. *Id.*, ¶ 11; *see* Motion to Transfer at 8. Heartland alleges that Mercury falsely advertises those services, an allegation expressly based in part on monthly statements from Mercury customers located in the San Francisco Bay Area. *Id.*, ¶ 22. The inflated fees revealed on the statements show that Mercury has disseminated false advertisements in California. Heartland also alleges that, based on a random sampling of Mercury statements, Mercury is likely falsely advertising its services to at least 75% of the merchants it targets. *Id.*, ¶ 33; *see also id.*, ¶ 20. The reasonable inference from that allegation, particularly in conjunction with the other allegations of California advertising, is that Mercury is falsely advertising its services to at least some Californian merchants. In addition, Heartland's allegations regarding Mercury's wrongful conduct in making the 2008 bid to a California-based restaurant chain

---

[11] This case is markedly different from the authority Mercury cites. In *Tidenburg*, the plaintiffs attempted to establish connections with California solely by asserting the party's principal place of business was in California, so the court should assume the false advertising emanated from there. *Tidenberg v. Bidz.com, Inc.*, 2009 U.S. Dist. LEXIS 21916, *11-12 (C.D. Cal. Mar. 4, 2009). In *Jones-Boyle*, the plaintiff did not allege any harmful conduct in California, but rather simply asserted that the conduct would probably affect someone in California if the entire class was considered. *Jones-Boyle v. Wash. Mut. Bank, F.A.*, 2010 U.S. Dist. LEXIS 78208, *31-32 (N.D. Cal. July 7, 2010). In *Churchill*, for non-Californian claimants, the sole connection to California was not based on the allegedly fraudulent settlement implementation. *Churchill Village, L.L.C. v. GE*, 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000).

1    provide a specific example of false advertising in California. *Id., ¶* 26.

2         Heartland also alleges that it suffered injury in California. Heartland and Mercury

3    compete in California to provide processing services to small- and mid-sized merchants. *Id., ¶¶*

4    8, 13, 25. The example of Mercury's false advertising to the California-based restaurant chain,

5    the inflated fees revealed by the statements of San Francisco merchants, and the inference that

6    Mercury's false advertising to at least 75% of its targeted merchants includes false advertising in

7    California, show injury in California to Heartland: Heartland either loses business (including the

8    business of 50 restaurants as specifically alleged, *id.*, ¶ 27) as a result of Mercury's false

9    advertising, or Heartland must reduce its own margins to match or beat the price Mercury falsely

10   assures merchants it will provide. *Id., ¶* 32. Heartland has alleged false advertising and resulting

11   injury to it in California, and has standing under the UCL and FAL.

12              **2.    Actual Reliance Need Not Be Pled In Competitor Cases Under The**
                       **UCL -- Yet Heartland Does Allege Actual Reliance By Merchants.**
13

14        Mercury also argues that Heartland lacks standing because it failed to allege its own

15   reliance on Mercury's false advertisements. The argument is absurd. It is nonsensical to suggest

16   that Heartland must allege that Heartland relied on the false advertisements that Mercury made to

17   customers for whose business Heartland and Mercury compete. Mercury relies entirely on a case

18   involving a claim by allegedly defrauded consumers, *In re Tobacco II Cases*, where actual

19   reliance was required because without such reliance the consumers were not injured and did not

20   have standing. 46 Cal. 4th 298, 328 (2009). That holding does not apply here, where Heartland

21   has standing as a competitor injured by Mercury's unfair competition and false advertising.

22        Competitors have standing under the UCL and FAL, and can assert claims based on false

23   advertisements made to consumers that harm the competitor's business. *See, e.g., VP Racing*

24   *Fuels, Inc. v. Gen. Petroleum Corp.*, 2010 U.S. Dist. LEXIS 47453, *7 (E.D. Cal. Apr. 20, 2010)

25   ("Plaintiff has been injured by consumer reliance upon Defendant's misrepresentations which

26   have resulted in competitive harm and diverted sales."). In *Infostream Group, Inc. v. Paypal,*

27   *Inc.*, an "adult" website sued Paypal, alleging both common law fraud claims and claims under

28   the fraudulent prong of the UCL. 2012 U.S. Dist. LEXIS 122255, *27-36 (N.D. Cal. Aug. 28,

- 21 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

1   2012).  The court dismissed the common law fraud claim for, among other things, insufficiently

2   alleging that the plaintiff relied on Paypal's fraudulent communications.  *Id.* at *31.  However,

3   the court refused to dismiss plaintiff's UCL claim, in which the plaintiff alleged that Paypal's

4   fraudulent conduct had caused consumers to switch to other substitute websites that were

5   supported by Paypal.  *Id.* at *34-36.  The court stated that fraud under the UCL only required a

6   showing that members of the public were likely to be deceived.  *Id.* at *35.  Reliance by the

7   plaintiff was not required.  *Id.* at *35-36.

8       Heartland also is not required to allege actual reliance by merchants on Mercury's false

9   advertising, though Heartland does make such allegations.  *See Orchard Supply Hardware LLC*

10  *v. Home Depot USA, Inc.*, 2013 U.S. Dist. LEXIS 134317, *43 (N.D. Cal. Sept. 19, 2013) (To

11  state an FAL claim "'it is necessary only to show that members of the public are likely to be

12  deceived' by an advertisement.");  *see also Am. Specialty Health Group, Inc.*, 2012 U.S. Dist.

13  LEXIS 147522 at *21 (naming individuals who have seen or been misled by defendant's false

14  advertisements is "not necessary to state a claim" where the advertisement is literally false).

15  Indeed, even the consumer case that Mercury cites holds that, when a long-term advertising

16  campaign is at issue, plaintiffs need not plead reliance with an "unrealistic degree of specificity."

17  *In re Tobacco II Cases*, 46 Cal. 4th at 328.  Heartland alleges that merchants are likely to rely on

18  Mercury's false advertising, and further alleges that merchants actually and reasonably relied on

19  Mercury's false advertising.  Compl.,¶ 27 (restaurant chain switched to Mercury after a bidding

20  process, and stated as one of its reasons that "Mercury by far provided the best rates"); *id.*, ¶ 25

21  (merchants choose Mercury because Mercury claims to have a lower mark-up, and Heartland

22  was able to retain merchants who were considering switching to Mercury by matching Mercury's

23  falsely advertised pricing levels); *id.*, ¶ 21 (alleging that Mercury's representations, for example

24  in the Operating Guide, lead merchants to conclude that Mercury's "interchange fees" are the

25  same as with any processor).  It is immaterial that the Complaint does not use the word

26  "reliance."  Assuming *arguendo* that Heartland must plead reliance by merchants, Heartland has

27

28

Case No.
4:14-cv-00437 CW

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1    pled facts that demonstrate reliance.[12]

2    **F.   Heartland Has Stated Claims For Intentional Interference With Prospective Economic Advantage and Contractual Relations.**

3

4    **1.   Heartland Has Sufficiently Alleged Independently Wrongful Conduct In Support Of Its IPEA Claim.**

5    Mercury argues that Heartland's claim for intentional interference with prospective

6    economic advantage ("IPEA") should be dismissed because Heartland has not alleged any

7    wrongful conduct by Mercury.   The argument rests entirely on Mercury's contention that

8    Heartland has failed to properly plead its false advertising claims under the Lanham Act, FAL,

9    and UCL.   As explained above, Heartland has adequately alleged that Mercury engaged in false

10   advertising, by which Mercury wrongfully induced merchants to select and remain with Mercury

11   based on its purported price.   Heartland has also alleged that Mercury and its agents falsely

12   inform merchants who want to switch to Heartland that Heartland's services are not compatible

13   with their equipment or that switching would unduly difficult and expensive.   Compl., ¶¶ 35-36.

14   Heartland has alleged independently actionable conduct that supports its claim for IIPEA.

15   **2.   Heartland Has Sufficiently Alleged Economic And Contractual Relationships That Were Disrupted By Mercury's Wrongful Conduct.**

16

17   Mercury also argues that Heartland's IIPEA and Intentional Interference with Contractual

18   Relations (IICR) claims should be dismissed because Heartland has not alleged specific

19   economic and contractual relationships that were disrupted by Mercury's conduct.   Mercury

20   relies for this argument on an unjustified reading of the Complaint.   The Complaint certainly

21   does not "admit" that Heartland has no basis to allege that its loss of sales and customers is

22   attributable to Mercury's false representations.   Compl.,¶ 25.   To the contrary, the Complaint

23   ---

24   [12] The Complaint also alleges (and the reasonable inference must be drawn) that it is profoundly
     reasonable for merchants to use pricing information in deciding which payment processor to
     work with.   *See, e.g.,* Compl., ¶¶ 10, 13 (small- to medium-sized merchants typically operate on

25   thin profit margins, so a small difference in the cost of processing services is very important to
     them); *id.*, ¶ 24 (inflated charges significantly decrease the profit margins of small- to medium-
     sized merchants, especially merchants with a large volume of small transactions).   Therefore,

26   even if the Complaint did not allege reliance, an inference of reliance would arise because a
     misrepresented price, especially to price-conscious small- and medium-sized merchants, is the

27   perfect example of a misrepresented material term.   *In re Tobacco II Cases*, 46 Cal. 4th at 327
     ("Moreover, a presumption, or at least an inference, of reliance arises wherever there is a

28   showing that a misrepresentation was material.").

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1    acknowledges that Heartland cannot, without discovery, know why every merchant who leaves

2    Heartland has chosen to do so, but alleges the facts that Heartland has been able to gather so far,

3    which create a strong inference that Mercury's falsely-represented pricing structure has caused

4    merchants to leave.  *Id.*  Heartland has identified nearly 30 merchants who have left Heartland

5    for Mercury within the six months prior to the filing of the Complaint, and Heartland was only

6    able to retain certain other merchants by matching Mercury's claimed pricing.  *Id.*  This suggests

7    that the determinative factor for merchants deciding whether to stay or go is the price they

8    believe they will be getting with Mercury; when Heartland matches that false price, merchants

9    stay.  The allegations, and reasonable inferences therefrom, show the causal link that Mercury

10    claims is missing.

11          Heartland also provides a specific example of Mercury's interference with a prospective

12    economic relationship, the California-based restaurant chain.  *Id.*, ¶ 27.  And Heartland has

13    identified particular relationships and contracts that were disrupted: the many medium- and

14    small-sized merchants that switched from Heartland to Mercury as a result of Mercury's false

15    advertising, including at least 30 in the six months prior to the filing of the Complaint alone.  *Id.*,

16    ¶ 25, 32.  Heartland is not required to separately allege the identity of each and every merchant

17    who left Heartland for Mercury, or who chose Mercury over Heartland, because of Mercury's

18    false representations about pricing.  Such overwhelming detail would likely be impossible to

19    provide without discovery, and is not required by any pleading standard.

20          Mercury's IICR-specific arguments rest primarily on *Image Online Design, Inc. v.*

21    *Internet Corp. for Assigned Names & Nos,.* 2013 U.S. Dist. LEXIS 16896 (C.D. Cal. Feb. 7,

22    2013).  But Heartland's IICR claim does not rest on the type of interference allegations that were

23    dismissed in Image Online.  *Id.* at *27-29.  The plaintiff alleged that defendant ICANN, a

24    government-authorized administrator of Internet domain names, intentionally interfered with its

25    contracts by entertaining applications to allow entities other than the plaintiff to operate the web

26    registry the plaintiff had previously operated by itself.  *Id.*  The plaintiff did not allege that it had

27    any contracts that were actually disrupted, or even that it had suffered any damage.  *Id.*  Rather, it

28    alleged that the defendant's actions generally disrupted its business model and its ability to retain

- 24 -

1  its contracts in the future.  *Id.*  By contrast, Heartland is not alleging a generalized disruption to

2  its business: it is alleging that it had contracts with hundreds of merchants, those merchants were

3  specifically targeted by Mercury's false advertising, and as a result, specific, actual breaches

4  occurred.  It is unreasonable to expect Heartland to allege each individual contract that was

5  disrupted, especially since Mercury, not Heartland, knows which merchants were exposed to

6  Mercury's false allegations and which former Heartland merchants are now with Mercury.

7        **G.**    **If The Complaint Is Dismissed, Leave To Amend Should Be Granted.**

8        If the Court decides that Heartland's Complaint, or any part of Heartland's Complaint,

9  should be dismissed, the Court should permit Heartland to amend.  Generally speaking, leave to

10  amend a complaint which has been dismissed should be freely granted.  *See* FRCP 15(a);

11  *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014).  There would

12  be no prejudice to Mercury in allowing Heartland to amend.  In fact, Mercury has not even

13  argued that dismissal should be with prejudice.  Dismissal without leave to amend is only proper

14  under futility analysis if it is clear that a complaint could not possibly be saved by any

15  amendment.  *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

16        Here, amending would not be futile.  Since Heartland filed its Complaint, numerous

17  merchants have come forward confirming the allegations of the Complaint, including those made

18  on information and belief.  Heartland has also since obtained copies of Mercury's merchant

19  application, which likewise confirm the allegations of the Complaint.  Should additional

20  particularity be required, Heartland is in a position to provide it.

21  **V.**    **CONCLUSION**

22        For the reasons set forth herein, Mercury's Motion should be denied.

23
24  Dated:  May _8, 2014            SHARTSIS FRIESE LLP

25                         */s/ Lisa A. Jacobs*

26                    By:     LISA A. JACOBS

27                    Attorneys for Plaintiff
                  HEARTLAND PAYMENT SYSTEMS, INC.

28

Case No.
4:14-cv-00437 CW    PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT

*SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598*