IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HEARTLAND PAYMENT SYSTEMS, INC.,

     Plaintiff,

    v.

MERCURY PAYMENT SYSTEMS, LLC,

     Defendant.

_____/

No. C 14-0437 CW

ORDER GRANTING
MOTION TO DISMISS
AND GRANTING LEAVE
TO AMEND

(Docket No. 15)

    Plaintiff Heartland Payment Systems (Heartland) asserts various unfair business practice claims against Defendant Mercury Payment Systems (Mercury). Mercury moves to dismiss the complaint. (Docket No. 15.) Heartland has filed an opposition. Mercury has filed a reply. Having considered the motion on the papers, the Court GRANTS the motion to dismiss and grants leave to amend.

BACKGROUND

    The following facts are alleged in the complaint and taken as true for the purposes of this motion.

    Heartland and Mercury are competing electronic payment processors who provide to businesses, known as merchants, point-of-sale (POS) systems. Compl. ¶¶ 7, 11. POS systems enable merchants to accept credit cards and debit cards. Id. ¶ 9. Through POS systems, banks (e.g., Wells Fargo) and credit card brands (e.g., Visa or Mastercard) are able to receive their fees, merchants are able to receive the proceeds from the sale, and

consumers have their accounts charged.  Id.  Both Heartland and Mercury serve small and medium-sized merchants.  Id. ¶ 10.

Both companies use, although not exclusively, an "interchange-plus pricing model."  Id.  According to this model, banks and credit card brands charge a fee, typically as a percentage of the transaction plus a per-transaction fee.  Id. ¶ 16.  POS systems providers then charge an additional fee (the "plus" fee) to the merchants as the cost for being the intermediary between the banks, credit card brands and the merchants.  Id.  The interchange fee is that which is charged by the banks and credit card brands, and is not controlled by the POS systems providers.  Id.  The "plus" fee is controlled by the POS system providers.  Id.  This fee is assessed "usually in some combination of basis points and cents-per-transaction."  Id.  Network and interchange fees can be reset as often as twice per year.  Id.

In recent years, Heartland has produced and promulgated a document called the "Merchant Bill of Rights."  Id. ¶ 17.  The document discusses the issue of "undisclosed fee markups" by payment processors.  In this document, Heartland informs merchants that some processors, taking advantage of the bi-yearly interchange fee adjustment, "seize the opportunity to inflate" the interchange fees and "then deceptively blame the increase on the card brands."  Id.  Heartland alleges that Mercury is a payment processor that has engaged in this deception.  Id.

Heartland alleges that Mercury deceives merchants by telling them that it will pass the interchange fees "at cost" (i.e., as charged by the banks and card brands, with no markup) and that its

United States District Court
For the Northern District of California

fee is a "mark-up on a per transaction basis in addition to other fees, such as monthly flat rate fees." Id. ¶ 18.  Heartland alleges that Mercury achieves this deception through its merchant application, the representations of third-party POS dealers who sell Mercury's product, its website, and "other advertising and promotional materials distributed to merchants and potential merchants." Id. ¶ 19.  It also alleges that Mercury's "Operating Guide," which is published on its website, contains deceptive language that misrepresents how Mercury bills its merchants. Id. ¶ 21.

Subsequent to its discovery of Mercury's alleged deception, Heartland reviewed nearly 300 of Mercury's monthly billing statements, including "a number of statements from merchants who are located in the San Francisco Bay Area." Id. ¶ 22.  Heartland alleges that in seventy-five percent of those statements, Mercury actually charged a fee that was higher than what it disclosed. Id. ¶ 22.  Heartland alleges that merchants are deceived because they are "unaware of what the actual network fees are and cannot easily determine based on Mercury's statements that those fees have been inflated." Id. ¶ 25.  Heartland alleges that Mercury began this widespread practice of deception in or around June 2011.  Id.  Heartland alleges that it has lost business and believes it will continue to lose business as a result of Mercury's misrepresentations and deceitful conduct.  Id.

Heartland has identified thirty merchants who have cancelled their POS contract with Heartland and entered into a POS contract with Mercury.  Id.  As an example, Heartland alleges that, in 2008, it lost a bid to Mercury to supply payment processing

services to a California restaurant chain.  Id.  It now believes that, based on a discussion with an operator of one of these restaurants and an examination of a monthly statement, its bid was deceptively undercut by Mercury.  Id. ¶¶ 26-27.  Heartland alleges that, while the statement showed the bid-upon amount as the "plus" fee, it also revealed that Mercury had "falsely inflated network charges to impose an additional four cent fee per card transaction."  Id. ¶ 28.

Heartland asserts five causes of action against Mercury: (1) false advertising in violation of 15 U.S.C. § 1125(a)(1)(B) (Lanham Act); (2) unfair competition in violation of California's Unfair Competition Law, Business and Professions Code section 17000 et seq. (UCL); (3) false advertising in violation of California Business and Professions Code section 17500 et seq. (FAL); (4) intentional interference with contractual relations; and (5) intentional interference with prospective economic advantage.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

4

United States District Court
For the Northern District of California

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008).  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice.  Id. However, the court need not accept legal conclusions, including "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

I. Mercury's Request for Judicial Notice (RFJN)

Although courts generally cannot consider documentary evidence on a motion to dismiss, doing so is appropriate when the pleadings refer to the documents, their authenticity is not in question and there are no disputes over their relevance.  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010); see

also <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994), <u>overruled on other grounds by</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002) (holding that courts may properly consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading").  This includes "internet pages as it does . . . printed material." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005).

Mercury asks, and there is no record of Heartland opposing, that the Court take judicial notice of various documents associated with Mercury's contracts, applications, marketing and advertising materials.  Specifically, it requests that Court take judicial notice of the following: (1) Mercury's Merchant Application; (2) Mercury's "Operating Guide"; (3) Heartland's "Merchant Bill of Rights" homepage; (4) the "Know Your Rights" webpage; (5) and a PDF version of the "Merchants Bill of Rights." Request for Judicial Notice (RFJN), Docket Nos. 18 and 35.

Heartland explicitly refers to Mercury's Merchant Application, Compl. ¶ 19; Mercury's "Operating Guide," <u>id.</u> ¶ 21; and Heartland's "Merchant Bill of Rights" (both website and document), <u>id.</u> ¶ 17.  Furthermore, Heartland does not question the authenticity of these documents nor their relevance.  Accordingly, the Court takes judicial notice of the aforementioned documents.

Heartland does not, however, explicitly refer to its own "Know Your Rights" webpage.  Mercury includes this webpage because it is "a complete interactive version of Heartland's Merchant Bill of Rights and a link to a standalone PDF version of the Merchant Bill of Rights."  RFJN, Docket No. 18 ¶ 3.  Mercury has not

stated, however, how this webpage is relevant in the light of the Merchant Bill of Rights document itself.  Accordingly, the Court declines to take judicial notice of the "Know Your Rights" webpage.

II. Mercury's Motion to Dismiss

Mercury seeks to dismiss all claims against it.

A. Federal Rule of Civil Procedure 9(b)

As a threshold matter, Mercury argues that all of Heartland's causes of action fail because they do not satisfy the heightened pleading requirements of Rule 9(b).

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  "Therefore, in an action based on state law, while a district court will rely on state law to ascertain the elements of fraud that a party must plead, it will also follow Rule 9(b) in requiring that the circumstances of the fraud be pleaded with particularity." Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 996 (N.D. Cal. 2009); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  "[W]hen the claim is 'grounded in fraud,' the pleading of that claim as a whole is subject to Rule 9(b)'s particularity requirement." Marolda, 672 F. Supp. 2d at 997 (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104 (9th Cir. 2003)).  A plaintiff must describe the alleged fraud in specific enough terms "to give defendants notice of the particular misconduct so that they can defend against the charge." Kearns, 567 F.3d at 1124.  Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the alleged fraudulent conduct. Cooper v. Pickett, 137 F.3d 616, 627

United States District Court
For the Northern District of California

7

United States District Court
For the Northern District of California

(9th Cir. 1997).  "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (1991).

Heartland responds that (1) the Lanham Act cause of action does not require scienter, hence, it is not "grounded in fraud"; (2) even if Rule 9(b) applies to the other claims, they are stated with the required particularity; or, in the alternative, (3) Rule 9(b) should be applied less stringently because the factual details underpinning the causes of action are uniquely known to Mercury.

While Heartland may not use the word "fraud" in all of its causes of action, it has alleged "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [its] claim[s]."  See Kearns, 567 F.3d at 1125. Throughout the complaint, Heartland alleges that Mercury has engaged in "deceptive" and "false" conduct in how it bills and charges merchants.  See, e.g., Compl. ¶¶ 17, 25, 30-38.  Heartland also alleges that Mercury, "intentionally and willfully" or fraudulently, violated false advertising and false misrepresentation laws.  See, e.g., id. ¶¶ 44, 49, 64.  Heartland also seeks punitive damages "sufficient to punish and make an example" of Mercury.  When a complaint as a whole is "'grounded in fraud' or . . . 'sound[s] in fraud,' . . . the pleading . . . as a

1   whole must satisfy the particularity requirement of Rule 9(b)."

2   <u>Kearns</u>, 567 F.3d at 1125.

3        Accordingly, the Court finds that Heartland must plead each

4   cause of action with the particularity required by Rule 9(b).  The

5   Court now turns to each cause of action.

6        B. First Cause of Action: False Advertising in Violation of
          15 U.S.C. § 1125(a)(1)(B) (Lanham Act)
7

8        The elements of a Lanham Act . . . false advertising claim
         are: (1) a false statement of fact by the defendant in a
9        commercial advertisement about its own or another's product;
         (2) the statement actually deceived or has the tendency to
10       deceive a substantial segment of its audience; (3) the
         deception is material, in that it is likely to influence the
11       purchasing decision; (4) the defendant caused its false
         statement to enter interstate commerce; and (5) the plaintiff
12       has been or is likely to be injured as a result of the false
         statement, either by direct diversion of sales from itself to
13       defendant or by a lessening of the goodwill associated with
         its products.

14  <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th

15  Cir. 1997) (citing 15 U.S.C. § 1125(a)(1)(B)).

16       In its first cause of action, Heartland alleges that Mercury

17  "has made and will continue to make, in commercial advertising or

18  promotion throughout the United States including in California,

19  false and/or misleading statements of fact that misrepresent the

20  nature, characteristics and/or qualities of Defendant's and

21  Plaintiff's services" in violation of the Lanham Act.  Compl.

22  ¶ 41.

23       The first element of a Lanham Act false advertisement cause

24  of action requires a plaintiff to allege "a false statement of

25  fact by the defendant in a commercial advertisement about its own

26  or another's product."  <u>Southland Sod Farms</u>, 108 F.3d at 1139.

27  Thus, Heartland needs to allege both that Mercury made a false

28

United States District Court
For the Northern District of California

statement and that the statement was made in a commercial advertisement.

"To constitute 'commercial advertising or promotion' under the Lanham Act, a statement must be: (1) commercial speech, (2) by a defendant who is a commercial competitor of the plaintiff, (3) for the purpose of inducing customers to buy defendant's goods or services, and (4) disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the industry." Bernard v. Donat, 2012 WL 525533, at *2 (N.D. Cal.) (citing Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999)).

Heartland alleges that because neither it nor Mercury engages in "traditional" advertising, "individual representations made to individual merchants" constitute "commercial advertising or promotion." Docket No. 25 at 14.  It alleges that Mercury's false advertising takes two forms: (1) oral statements to merchants; and (2) written documents, including monthly billing statements, the Merchant Application, and the Operating Guide.  Mercury counters that (1) monthly statements are not advertisement, because they "memorialize transactions that have already occurred;" (2) the Merchant Application is a contract, and not promotional; and (3) the Operating Guide, despite being on its website, is a mere "technical manual."  Docket No. 15 at 12.

### 1. Rule 9(b)

Heartland argues that the Lanham Act cause of action should not be subject to the heightened pleading standards of Rule 9(b) because "district courts are split on whether Rule 9(b) applies." Pl.'s Opp'n Def.'s Mot. Dismiss, Docket No. 25 at 4.  This

argument is unavailing; the heightened pleading is required for every cause of action in the complaint because the entire complaint sounds in fraud.  While each individual cause of action, taken alone, may not be generally subject to Rule 9(b), they are within a complaint that "sounds in fraud."

The purpose of Rule 9(b) is "to give defendants notice of the particular misconduct so that they can defend against the charge." Kearns, 567 F.3d at 1124.  Heartland argues that "less particularity is required under Rule 9(b) when, as in this case, such detailed facts are uniquely known to the defendant."  Docket No. 25 at 8.

With respect to alleged oral statements made by Mercury to merchants, Heartland fails to allege its Lanham Act cause of action with the particularity required under Rule 9(b).  As stated above, when a complaint sounding in fraud is against a corporate party "the plaintiff [must] allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  Tarmann, 2 Cal. App. 4th at 157.  Heartland alleges that it has the name of at least one merchant it believes was a victim of Mercury's deception.  Yet it fails to disclose the name of that merchant, or any other merchant who it claims was deceived.  It also fails to allege any facts to support that it was a Mercury employee or representative who made false statements to current or potential merchants.

Accordingly, to the extent this cause of action relies on alleged oral statements from Mercury employees to merchants, the Court dismisses it for failure to comply with Rule 9(b) by failing

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

to identify the details of the oral representations.  Heartland is granted leave to amend to remedy this deficiency if it can do so truthfully and without contradicting the allegations in its prior pleadings.

However, it is true that Heartland cannot know the particularities of exactly which Mercury employee drafted the alleged advertisements.  Accordingly, to the extent that this cause of action relies on written documents of which the Court has taken judicial notice, the Court declines to dismiss it for failure to identify who made statements and when.  Nonetheless it fails to state the alleged false statements with sufficient particularity.

            2. "Commercial advertising and promotion"

Mercury argues that even if Heartland's Lanham Act cause of action did not fail due to Rule 9(b), it fails because Heartland has not adequately alleged that its statements or documents (1) are commercial advertising or promotion; or (2) contain false statements of fact.

"The core notion of commercial speech is 'speech which does no more than propose a commercial transaction.'"  Rice v. Fox Broad. Co., 330 F.3d 1170, 1181 (9th Cir. 2003).  As discussed above, Heartland does not state any facts to support that Mercury employees made oral statements to merchants that could be considered commercial speech.  Thus, Heartland fails to allege that Mercury employees engaged in commercial speech, and hence it fails to state a claim under the Lanham Act with regard to oral statements.  Accordingly, to the extent this cause of action relies on alleged oral statements from Mercury employees to

**United States District Court**
For the Northern District of California

merchants, the Court dismisses it for this reason also.  Heartland is granted leave to amend to remedy this deficiency if it can do so truthfully and without contradicting the allegations in its prior pleadings.

On the other hand, the monthly statements could induce merchants to continue using Mercury's services, and hence could be considered commercial speech designed to propose a continued business relationship.  Likewise, the Operating Guide posted on Mercury's website could be seen to propose a commercial transaction by providing information to a potential merchant who may be considering using Mercury's services.  Likewise, the Merchant Application could be viewed as proposing a commercial transaction, not as a contract, as Mercury purports, but rather as an offer to enter into a contract.  See, e.g., RFJN, Ex. 1 ("If this Merchant Application is accepted for card services. . .").  As such, the Application's "Card Services Terms & Conditions" section arguably constitutes commercial speech.  Accordingly, to the extent that the cause of action relies on Mercury's written documents, the Court declines to dismiss it for failure adequately to allege commercial speech.

3. "False statement of fact"

Even if the oral statements and written documents are commercial speech, and satisfy the other requirements for

commercial advertising or promotion,[1] Mercury argues that neither the oral statements nor the written documents contain any false statements of fact.

Heartland alleges that, both in the oral statements and written documents, "Mercury represents to . . . merchants that Mercury will pass interchange fees through at cost, and will charge an additional, disclosed, mark-up on a per transaction basis (in addition to other fees, such as monthly flat rate fees). In fact, however, . . . Mercury is significantly inflating the interchange fees over cost." Compl. ¶ 18. Heartland alleges that Mercury "misrepresents" its pricing, but it has not stated facts sufficient to support the inference that 1) Mercury discloses its pricing in the way Heartland alleges, or that 2) Mercury has actually charged something other than what it discloses. It fails to allege any facts -- such as specific language or terms in the monthly statements, Operating Guide or Merchant Application -- to support the inference that the documents do not contain truthful "detailed terms and conditions . . . that make clear disclosures about Mercury's pricing and fees." Def.'s Reply Supp. Mot. Dismiss, Docket No. 33 at 4. Heartland claims to have copies of specific applications, but alleges that it did not have them at the time the complaint was filed. Be that as it may, without some specific allegation as to what statements in the documents are

---

[1] The other elements require a defendant who is a commercial competitor of the plaintiff, commercial speech made for the purpose of inducing customers to buy defendant's goods or services, and disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within the industry. These elements are not in dispute.

United States District Court
For the Northern District of California

false and why, Heartland fails to state a claim under Rule 9(b) and the Lanham Act.

Accordingly, to the extent it is based on the written documents, this cause of action is dismissed for failure to state a claim on this ground.  To the extent it is based on the oral statements, this cause of action is dismissed for this reason as well, in addition to the reasons discussed above.  Heartland is granted leave to amend to remedy the deficiencies noted above if it can do so truthfully and without contradicting the allegations in its prior pleadings.

C. Second Cause of Action: Unfair Competition in Violation of California Business and Professions Code section 17200 <u>et seq.</u> (UCL)

The UCL prohibits "any unlawful, unfair or fraudulent business act."  Cal. Bus. & Prof. Code § 17200 <u>et seq.</u>  Because section 17200 is written in the disjunctive, it establishes three types of unfair competition.  <u>Davis v. Ford Motor Credit Co.</u>, 179 Cal. App. 4th 581, 593 (2009).  Therefore, a practice may be prohibited as unfair or deceptive even if it is not unlawful and vice versa.  <u>Podolsky v. First Healthcare Corp.</u>, 50 Cal. App. 4th 632, 647 (1996).  Heartland alleges claims under all three prongs.

1. Rule 9(b)

Heartland relies on the same set of facts to support its UCL claims as it does for its Lanham Act claims.  Accordingly, the Court dismisses Heartland's UCL causes of action for failure to comply with Rule 9(b).  Heartland is granted leave to amend to remedy this deficiency if it can do so truthfully and without contradicting the allegations in its prior pleadings.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

In addition to moving for dismissal based on Rule 9(b), Mercury moves to dismiss Heartland's UCL causes of action for failure to state a claim.

### 2. Failure to state a claim: Unlawful business practices

An unlawful business practice includes anything that can be called a business practice and that is forbidden by law. Ticconi v. Blue Shield of Cal. Life & Health Ins., 160 Cal. App. 4th 528, 539 (2008). Any federal, state or local law can serve as a predicate for an unlawful business practice action. Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 718 (2001). Thus, the UCL incorporates violations of other laws and treats them as unlawful practices independently actionable under the UCL. Id.; Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000); Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).

Heartland alleges that Mercury's false statements, as found in its written materials, are unlawful because they violate the Lanham Act and California's False Advertising Law (FAL). As discussed elsewhere in this order, Heartland fails to state a claim under Rule 9(b), the Lanham Act and the FAL because it does not state facts sufficient to support the allegation that Mercury has made false statements, either in its oral statements or written documents.

### 3. Failure to state a claim: Unfair business practices

"When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that

threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc., 20 Cal. 4th at 187.

Heartland alleges that Mercury's actions threaten a violation of antitrust law, "including but not limited to Section 5 of the Federal Trade Commission Act, violate the policy or spirit of such law, and/or otherwise significantly threaten or harm competition." Compl. ¶ 48. Heartland fails to state facts to support the allegation that Mercury's conduct violates or threatens to violate § 5 of the Federal Trade Commission Act, or any anti-trust law.

Accordingly, Heartland's cause of action for unfair business practices is dismissed for failure to state a claim, and for lack of particularity under Rule 9(b).

### 4. Failure to state a claim: Fraudulent business practices

"A fraudulent business practice is one in which members of the public are likely to be deceived." Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1254 (2009). As discussed above, Heartland's cause of action for fraudulent business practices relies on the same allegations as its other causes of action, and is dismissed under Rule 9(b).

### D. Third Cause of Action: False Advertising in Violation of California Business and Professions Code section 17500 et seq. (FAL)

California's False Advertising Law makes it unlawful for any person to induce the public to enter into any obligation based on a statement that is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. Whether an advertisement is misleading must be judged by the effect it

17

would have on a reasonable consumer. . . . A reasonable
consumer is the ordinary consumer acting reasonably under the
circumstances.  To prevail under this standard, [Plaintiff]
must show that members of the public are likely to be
deceived by the advertisement.

Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1162 (9th Cir. 2012)
(citations omitted).

>    1. Rule 9(b)

Again, Heartland relies on the same set of facts to support
its FAL claim as it does for its other claims.  Accordingly, as
discussed above, the Court dismisses this cause of action for
failure to comply with Rule 9(b).

>    2. Failure to state a claim

Even if Heartland's FAL cause of action did not fail due to
Rule 9(b), Mercury argues that Heartland fails to state a FAL
claim.  Mercury argues that the FAL requires that the "alleged
false advertising 'be made or disseminated before the public in
California or emanate from California.'"  Docket No. 15 at 20.
Hence, Mercury argues that the "Complaint does not allege that any
of Mercury's advertising emanates from California."  Id.

Mercury's argument is unpersuasive.  The complaint alleges
that Mercury's written representations, with regard to its
pricing, are disseminated to all California merchants with whom it
contracts.

The Court declines to dismiss Heartland's FAL cause of action
based on this argument.  However, as discussed above, it is
dismissed for failure to comport with the requirements of Rule
9(b).

**United States District Court**
For the Northern District of California

E. Fourth Cause of Action: Intentional Interference with
   Contractual Relations (IICR)

Heartland alleges that Mercury, with knowledge of Heartland's contractual relationships, "engaged in intentional actions to interfere with them by inducing merchants to terminate their contracts with Heartland and instead engage the services of Defendant." Compl. ¶ 59.

　　　1. Rule 9(b)

Heartland fails to allege this cause of action with the particularity required by Rule 9(b). It does not allege any particular contractual relationship, nor the "who, what, when, where, and how" the interference occurred. Accordingly, the Court GRANTS Mercury's motion to dismiss this cause of action for failure to comply with Rule 9(b). Heartland is granted leave to amend to remedy this deficiency if it can do so truthfully and without contradicting the allegations in its prior pleadings.

　　　2. Failure to State a Claim

Even if this cause of action did not fail under Rule 9(b), Mercury argues that Heartland fails to allege any "specific, intentional breaches of contract." Docket No. 15 at 22.

"Under California law, the elements for the tort of intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc., 766 F.3d 1002,

1006 (9th Cir. 2014) (citing <u>Pac. Gas & Elec. Co. v. Bear Stearns & Co.</u>, 50 Cal. 3d 1118 (1990)).

While Heartland asserts that it has "identified nearly thirty merchants who have left Heartland for Mercury within the last six months prior to filing the Complaint," it admits it does not know "why every merchant who leaves Heartland has chosen to do so," and cannot know without discovery.  Docket No. 25 at 24.  Be that as it may, Heartland does not allege that any of its contracts with any former merchant have actually been breached, much less breached because of interference by Mercury.

Accordingly, the Court GRANTS Mercury's motion to dismiss Heartland's IICR cause of action.  Heartland is granted leave to amend to remedy the deficiencies noted above if it can do so truthfully and without contradicting the allegations in its prior pleadings.

> F. Fifth Cause of Action: Intentional Interference with Prospective Economic Advantage (IIPEA)

Heartland alleges that it has "developed . . . prospective opportunities which are likely to benefit [it] in the future," but that Mercury, "with knowledge of these . . . future economic opportunities, engaged in wrongful and intentional actions to interfere with them by inducing . . . prospective merchants to sever their . . . prospective business relationships with Heartland and instead engage the services of" Mercury.  Compl. ¶¶ 63-64.

> 1. Rule 9(b)

Heartland fails to allege this cause of action with the particularity required by Rule 9(b).  It does not allege any

United States District Court
For the Northern District of California

particular prospective economic relationship, nor the "who, what, when, where, and how" the interference occurred.  Accordingly, the Court GRANTS Mercury's motion to dismiss this cause of action for failure to comply with Rule 9(b).  Heartland is granted leave to amend to remedy this deficiency if it can do so truthfully and without contradicting the allegations in its prior pleadings.

    2. Failure to state a claim

    "[A] plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself."  Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal. 4th 376, 392-93 (1995).

    Heartland alleges that Mercury's false advertising is the "wrong beyond measure of the interference itself."  As discussed above, Heartland's FAL allegations are dismissed, and this cause of action too is dismissed for failure to state a claim, as well as for failure to comport with the pleading requirement of Rule 9(b).

CONCLUSION

    For the foregoing reasons, the Court GRANTS Mercury's motion to dismiss (Docket No. 15), and the Court GRANTS Heartland leave to amend.  Within fourteen days of the date of this order, Heartland may file an amended complaint to remedy the deficiencies identified above.  It may not add further claims or allegations not authorized by this order.  If Heartland does not have facts to support some of these claims despite due diligence, but later discovers them, it may timely move for leave to amend further in the future.

**United States District Court**
For the Northern District of California

1    If Heartland files an amended complaint, Mercury shall

2  respond to it within fourteen days after it is filed.  If Mercury

3  files a motion to dismiss, Heartland shall respond to the motion

4  within fourteen days after it is filed.  Mercury's reply, if

5  necessary, shall be due seven days thereafter.  Any motion to

6  dismiss will be decided on the papers.

7    IT IS SO ORDERED.

8

9  Dated:  November 7, 2014

10                   CLAUDIA WILKEN
United States District Judge