SHARTSIS FRIESE LLP
FRANK A. CIALONE (Bar #172816)
fcialone@sflaw.com
LISA A. JACOBS (Bar #230364)
ljacobs@sflaw.com
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111-3598
Telephone:    (415) 421-6500
Facsimile:    (415) 421-2922

Attorneys for Plaintiff
HEARTLAND PAYMENT SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HEARTLAND PAYMENT SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>MERCURY PAYMENT SYSTEMS, LLC, a Delaware limited liability company,<br><br>Defendant and Counter-Claimant. | Case No. 4:14-cv-00437 CW<br><br>**REVISED [PROPOSED] STIPULATED ORDER REGARDING ELECTRONIC DISCOVERY**<br><br>Honorable Claudia Wilken<br><br>Trial Date:     June 19, 2017<br>Complaint filed: January 29, 2014 |

Plaintiffs and Defendants have met and conferred regarding electronic discovery, and hereby stipulate and agree to the following:

**I.    DEFINITIONS**

1.    "Bates Number" means the legible, unique fixed-length alphanumeric identifier containing eight (8) digits, plus a prefix identifying the producing Party (e.g., "US0000000").

2.    "Confidentiality Designation" means the Document's confidentiality designation (e.g., Confidential, Highly Confidential) pursuant to the Stipulated Protective Order filed with the Court.

3. "Court" means the United States District Court for the Northern District of California

4. "Disclosed Information" means any documents or information subject to a claim of attorney-client privilege or work product protection, and disclosed in connection with this Litigation, as described in Section VI.A.

5. "Disclosing Party" shall mean a Party who discloses Disclosed Information in connection with this Litigation, as described in Section VI.A.

6. "Document" carries the meaning consistent with Federal Rule of Civil Procedure 34(a), and includes ESI and paper (i.e., hard copy) documents.

7. "Electronically Stored Information" or "ESI" carries the meaning consistent with Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001.

8. "JPEG" refers to the Joint Photographic Experts Group's file format for storing graphic images using a compression algorithm.

9. "Litigation" means the above-captioned litigation, Heartland Payment Systems, Inc. v. Mercury Payment Systems, LLC, Case No. 4:14-cv-00437.

10. "Load File" means the load file format specified in Appendix A.

11. "Metadata" means structured information about ESI that is created by the file system or application, embedded in the Document and sometimes modified through ordinary business use. Metadata, when used in reference to paper Documents, means the fields that the producing Party must populate pursuant to Section V.A.1.

12. "Native Format" means the format of ESI in the application in which such ESI was originally created.

13. "Parties" or "Party" means Plaintiff and Defendant collectively, or each individually.

14. "OCR" means the optical character recognition technology used to read paper documents or electronic images of documents, and to output them to a searchable text.

15. "Responsive Document" means any Document, excluding source code, that is responsive to any document requests served on the producing Party in the Litigation that the

producing Party has agreed to produce, that has been voluntarily produced by the producing party as part of Rule 26(f) initial disclosures or otherwise, or that the producing Party has been ordered to produce by the Court.

16. "Stipulated Order" means this Stipulated Order Regarding Electronic Discovery.

17. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

**II.  SCOPE**

1. The procedures and protocols set forth in this Stipulated Order shall govern the production of Responsive Documents between the Parties in the Litigation. Any practice or procedure set forth herein may be varied only by further written agreement of all of the Parties.

2. The Parties do not waive any objections to the production, discoverability, or confidentiality of Documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of document requests related to Documents. Nothing in this Stipulated Order shall be interpreted to require the disclosure of irrelevant information, relevant information that is overly burdensome, or relevant information protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity.

3. The Parties shall make their best efforts to comply with—and resolve any differences concerning compliance with—this Stipulated Order. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

4. Notwithstanding anything to the contrary in this Stipulated Order, the following Document types are not discoverable in the Litigation—and, to the extent that they exist, need not be retained, processed, reviewed, or produced—except upon a showing of good cause: (a) recorded voice messages, including voice-mail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats; (b) instant messaging communications, including Skype communications; (c) back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium; (d) temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system; (e) common system and program files; (f) deleted, slack, fragmented or other

1. data only accessible by forensics; (g) on-line access data such as temporary Internet files, history, cache, cookies, and the like; (h) electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere; (i) other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere; (j) logs of calls made from mobile devices; (k) mobile text messages; (l) server, system, or network logs; (m) electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report; and (n) data remaining from systems that are no longer in use, and that is unintelligible on systems in use.

5. Data that will not be produced pursuant to Section II.4 need not be disclosed.

6. This Stipulated Order shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of Documents.

### III. PRESERVATION

1. Preservation of potentially relevant ESI shall be reasonable and proportionate. The producing Party shall take reasonable steps to collect and process Documents using methods that avoid spoliation of data. Provided that the Parties take reasonable steps to comply with this Stipulated Order, the Parties will not seek sanctions on a Party for failing to produce ESI that was inadvertently lost.

2. The Parties shall meet and confer regarding any issues not addressed under this Stipulated Order, including any reasonable methods to limit the scope of preservation and production, such as limiting the types of ESI to be preserved, selection of relevant custodians, the relevant date range, and technology-assisted culling or review process (i.e., predictive coding and/or keyword search terms).

### IV. PROCESSING SPECIFICATIONS & DATA RETENTION

1. Each producing Party shall collect and process Documents using forensically sound methods that avoid spoliation of data, and generate and preserve the MD5 hash values of all ESI based on the non-spoliated source native file.

2. <u>Original Documents</u>. Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain Native Format copies—including any associated Metadata—of all ESI preserved for and produced in this Litigation, and original versions of all paper Documents preserved for and produced in this Litigation. Nothing in this Stipulated Order shall alter a Party's obligation to retain data pursuant to the Federal Rules of Civil Procedure or a court order.

V.   PRODUCTION FORMAT

A.   General Provisions

1. <u>Metadata Fields and Processing</u>. Each of the Metadata and coding fields set forth in Appendix B which can be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Appendix B if such fields cannot be electronically extracted from a Document, with the exception of the following, which shall be populated by the producing Party:

(a)   BEGBATES,
(b)   ENDBATES,
(c)   BEGATTACH (IF APPLICABLE),
(d)   ENDATTACH (IF APPLICABLE),
(e)   CUSTODIAN,
(f)   CONFIDENTIALITY (IF APPLICABLE),
(g)   VOLUME,
(h)   NATIVELINK (IF APPLICABLE), AND
(i)   REDACTED (IF APPLICABLE).

2. <u>Text Files</u>. For each Document, a single text file shall be provided along with the image (or native) files and Metadata. The text file name shall be the same as the Bates Number of the first page of the Document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a physical file—in which case a text file created using OCR will be produced in lieu of extracted text.

3. <u>De-Duplication</u>.  A Party is only required to produce a single copy of a responsive Document.  De-duplication shall be subject to the following protocol: removal of duplicate Documents shall be done on exact duplicate Documents across all custodians (i.e., globally).

4. <u>Load Files</u>.  Except where noted in Section V.B.7 below, all Documents shall be produced in electronic format, with files suitable for loading into a Concordance-compatible litigation support review database.  All productions will include both image and Metadata Load Files, with the Load File in the format described in Appendix A.

5. <u>Production Media</u>.  The producing Party shall produce all Documents (whether in TIFF, JPEG, or Native Format), Load Files, and Metadata on Production Media.  Each piece of Production Media shall include a unique identifying label including the following information:

(a) Name of the Litigation and its case number;

(b) Name of the producing Party;

(c) Date of the production (mm/dd/yyyy);

(d) Volume number;

(e) Bates Number range;

(f) Confidentiality Designation; and

(g) Notes regarding any irregularities in the production (e.g., whether it is replacement Production Media, as described in Section V.A.6, below).

6. <u>Replacement Production Media</u>.  Any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced.

7. <u>Encryption and Password Protection</u>.  All Production Media may be encrypted or password-protected, with the producing Party to provide a decryption key or password concurrently with (but under separate cover from) the production.

**B.   Electronically Stored Information**

1. <u>Documents Produced in Native Format</u>.  Certain file types—for example, Microsoft Excel spreadsheets and Microsoft PowerPoint Documents—can lose significant information and meaning when produced as an image.  The Parties have therefore agreed that, if

a Document cannot be accurately represented and comprehended as an image, it will be produced in Native Format. The production of Documents in Native Format shall be subject to the following protocol:

 (a) Any Documents produced in Native Format shall be produced with a Bates-numbered TIFF image slip-sheet stating the Document has been produced in Native Format, and noting the Document's Confidentiality Designation.

 (b) Any Documents produced in Native Format shall be produced with the applicable Metadata fields set forth in Appendix B, including the "NativeLink" field.

 (c) Any Document produced in Native Format shall be given a file name comprised of the Document's Bates Number, Confidentiality Designation (if applicable), and file extension (e.g., US00000000_CONF.xls or US00000000_HIGHCONF.xls).

 (d) Microsoft PowerPoint Documents shall be processed with hidden slides, with all speaker notes unhidden, and to show both the slide and the speaker's notes on the TIFF or JPEG image. If PowerPoint versions are not produced as native files, then (i) color PowerPoint Documents shall be converted to color JPEG images, and (ii) black and white PowerPoint Documents shall be converted to black and white TIFF images—provided, however, that proper grayscale printing shall be enabled to ensure that any dark colored text will not be hidden from view by other dark objects/drawings around the text.

 (e) If a Document to be produced in Native Format contains privileged information, it shall be produced in TIFF format with redactions. To the extent that Documents that fall under this paragraph contain privileged information and cannot be redacted or produced in TIFF format, such Documents shall be logged on a privilege log pursuant to Section VI.B.

- 7 -

(f) For any Document that is not produced in Native Format, and is not adequately represented as an image (i.e., in TIFF or JPEG format), each Party reserves the right to request production in Native Format; such requests shall be made according to the following protocol:

    (i) The receiving Party shall provide the producing Party with the Bates numbers of each Document(s) that it is requesting be produced in Native Format, along with a brief description of why each Document being requested cannot be accurately represented and comprehended as an image.

    (ii) The receiving Party shall make this request within sixty (60) days after the close of discovery—or, if a production is made after the close of discovery, within sixty (60) days after any such production is made.

    (iii) The producing Party shall respond to any such request within twenty (20) days of receiving this request by (1) producing the requested Documents in Native Format to the extent reasonably practicable, or (2) responding to the receiving Party in writing, setting forth its position regarding the production of the requested Documents.

    (iv) If the Parties are unable to agree as to the production of the requested Documents in Native Format, they may submit the matter to the Court.

2. <u>Documents Produced as TIFF or JPEG Images</u>. All Documents except those described in Section V.B.1, above, will be produced in TIFF or JPEG format, according to the following protocol:

(a) For those Documents that require color to understand their full meaning or content, the producing Party shall use its best efforts to produce such Documents in single-page JPEG format.

- 8 -

Case No.
4:14-cv-00437 CW

REVISED [PROPOSED] STIPULATED ORDER
REGARDING ELECTRONIC DISCOVERY

     (b)     All other Documents, other than those to be produced in Native Format, shall be produced as single-page Group IV TIFF images using at least 300 DPI print setting.

     (c)     If a Document is produced in TIFF format, but requires color to understand its full meaning and content, the receiving Party may, in good faith, request that the Document be produced in color format. The producing Party shall not unreasonably deny such a request, and shall produce such Documents in JPEG format.

     (d)     Each image (whether JPEG or TIFF) shall have a unique file name, which is the Bates Number of the Document.

     (e)     Each image shall be branded with its corresponding Bates Number and Confidentiality Designation, using a consistent font type and size. The producing Party shall make reasonable efforts to avoid obscuring any part of the underlying image with the Bates Number or Confidentiality Designation.

3.    <u>Productions in Prior Actions</u>. Notwithstanding anything in this Stipulated Order, a producing Party may produce ESI materials that were produced as TIFF or JPEG image files in a prior litigation or proceeding in the same manner as they were produced in that litigation or proceeding. A receiving Party may seek re-production of any such ESI in accordance with the processing specifications above—provided the ESI is available to the producing Party, and provided that the request is made on a document-by-document basis and for good reason.

4.    <u>Non-Responsive Attachments</u>. The parties agree that fully non-responsive attachments to responsive parent Documents need not be produced; however, non-responsive parent Documents must be produced if they contain any responsive attachments. If a producing Party withholds a fully non-responsive attachment, that producing Party will produce a Bates Numbered TIFF slip sheet in place of the attachment, along with all Metadata for that attachment as specified in Exhibit B—including the "FILENAME" and the "NONRESPONSIVE" Metadata fields—except that the "FULLTEXT" Metadata field need not be populated. The TIFF slip sheet

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1 for each withheld attachment shall state: "Non-Responsive Family Member." In the alternative, the producing Party may provide a spreadsheet listing all fully non-responsive attachments, including the Bates Number of the related parent Document in addition to the required Metadata fields listed above. The receiving Party retains the right to request the production of any Document withheld solely on grounds of non-responsiveness. The Parties agree to meet and confer in good faith regarding any disputes arising under this provision.

5. <u>Embedded Objects</u>. Non-image files embedded in Documents will be extracted as separate Documents and treated like attachments to the Document in which they were embedded. Image files embedded within Documents, such as signature blocks, shall not be extracted as separate Documents.

6. <u>Redaction</u>. If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced.

7. <u>Other ESI That Is Impractical to Produce in Traditional Formats (Including Structured Data)</u>. The Parties understand and acknowledge that certain categories of ESI are structurally complex, and do not lend themselves to production in Native Format or other traditional formats. To the extent that a response to discovery requires the production of such ESI—e.g., discoverable electronic information contained in a database—the Parties shall negotiate appropriate parameters for producing discoverable information and generating a report in a reasonably usable and exportable electronic file (e.g., Excel, CSV, or SQL format).

**C. Paper Documents**

1. <u>TIFF Images</u>. Paper Documents shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 DPI. Each image shall have a unique file name—i.e., the Bates Number of the Document—and shall be branded with its corresponding Bates Number and Confidentiality Designation, using a consistent font type and size. The producing Party shall make reasonable efforts to avoid obscuring any part of the underlying image with the Bates Number or Confidentiality Designation.

2. <u>OCR Acquired Text Files</u>. When subjecting paper Documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

1  settings such as "auto-skewing," "auto-rotation," and the like should be turned on when
2  Documents are run through the process.

3      3. <u>Database Load Files / Cross-Reference Files</u>. Paper Documents shall be provided
4  with: (a) a delimited Metadata file (.dat or .txt) and (b) an image load file (.opt), as detailed in
5  Appendix A.

6      4. <u>Unitization</u>. In scanning paper Documents, distinct Documents shall not be
7  merged into a single record, and single documents shall not be split into multiple records (i.e.,
8  paper Documents should be logically unitized). In the case of an organized compilation of
9  separate Documents—e.g., a binder containing several separate Documents behind numbered
10 tabs—the Document behind each tab should be scanned separately, but the relationship among
11 the Documents in the binder should be reflected in proper coding of the beginning and ending
12 Document and attachment fields. The Parties will make their best efforts to unitize Documents
13 correctly.

14 **VI. PRIVILEGE**

15     **A. Disclosed Information**

16     1. Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or
17 work-product-protected Document, whether inadvertent or otherwise, is not a waiver of privilege
18 or protection from discovery in this Litigation or in any other federal or state proceeding. For
19 example, the mere production of privileged or work-product-protected Documents in this
20 Litigation as part of a mass production is not itself a waiver in this Litigation or in any other
21 federal or state proceeding.

22     2. If the Disclosing Party claims that it has Disclosed Information, the receiving
23 Party shall:

24     (a) Return, delete, or destroy the Disclosed Information—and delete or
25         destroy the portions of all work product that reflect or are derived from
26         such Disclosed Information, including all copies thereof—within five (5)
27         business days of receiving notice of the Disclosed Information;
28     (b) Not use of any kind of such Disclosed Information and work product; and

- 11 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

  (c) Upon request by the Disclosing Party, confirm in writing that it has complied with the procedures described in subsection (a), above.

3. If a receiving Party knows or should reasonably know that it has received Disclosed Information, it shall promptly:

  (a) Sequester the Disclosed Information;

  (b) Refrain from using the Disclosed Information and the portions of all work product that reflect or are derived from such Disclosed Information;

  (c) Promptly notify the Disclosing Party of the existence of such Disclosed Information in order to permit the Disclosing Party to take protective measures as outlined above; and

  (d) Upon request by the Disclosing Party, comply with the procedures described in Section VI.A.2, above.

4. Nothing in this Stipulated Order shall limit the receiving Party's right to challenge—on grounds unrelated to the fact or circumstances of the disclosure—the Disclosing Party's claim that the Disclosed Information is protected from disclosure by the attorney-client privilege or work product doctrine. If, after undertaking an appropriate meet and confer process, the Parties are unable to resolve any dispute they have concerning the protection of Disclosed Information, the receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material. Any Disclosed Information submitted to the Court in connection with a challenge to the Disclosing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be filed under seal.

5. The terms of this Stipulated Order shall apply to any and all Disclosed Information that is disclosed during the course of this Litigation, including Disclosed Information disclosed prior or subsequent to the entry of this Stipulated Order.

6. Nothing in this Stipulated Order shall waive or limit any protections afforded the parties under Federal Rule of Evidence 502.

**B. Privilege Log**

1. Pursuant to Federal Rule of Civil Procedure 26, the Parties agree to exchange privilege logs that describe the nature of the documents, communications, or other tangible things that are not produced or disclosed in a manner that will enable other Parties to assess the claim of privilege, immunity, or other similar claim, without revealing the information itself that is asserted to be privileged or protected, except that:

 (a) The Parties shall have no obligation to log information generated after January 29, 2014, i.e., the filing date of the complaint in this Litigation;

 (b) The Parties shall have no obligation to log correspondence sent exclusively between in-house attorneys acting as counsel and outside counsel; and

 (c) Activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) are protected from disclosure under Federal Rules of Civil Procedure 26(b)(3)(A) and (B).

2. The Parties agree that all privilege logs shall include, but not be limited to, the following information:

 (a) The date of the Document;

 (b) The author of the Document;

 (c) The identity of all persons designated as addressees, copyees, or blind copyees;

 (d) The identity of any attorney named on the privilege log;

 (e) A description of the contents of the Document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privilege or immunity;

 (f) The type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and

   (g) For redacted Documents only, the Bates Numbers corresponding to the first and last page of any Document that has been redacted.

3. Each member of a family of a Document (i.e., each member of a set of Documents in a parent-child relationship) that is withheld or redacted on grounds of privilege or immunity shall be identified individually (e.g., email attaching memorandum), but members of the same family—to the extent that such members are also withheld or redacted—may be logged together as a single entry on the privilege log.

4. Any email chain (i.e., a series of emails linked together by email responses and/or forwarding) that is withheld or redacted on grounds of privilege or immunity may be logged together as a single entry on the privilege log, and may be identified/logged by the top-most email in the chain that is withheld or redacted.

## VII. LIMITATIONS ON PRODUCTION

1. Except where a specific exception has been noted in writing, a Party shall not be obligated to preserve, collect or produce ESI (or other Documents) that are in the actual possession or custody of a non-party to the Litigation.

## VIII. COMPLIANCE WITH LOCAL RULE 79-5.

1. A Party that seeks to file under seal any material designated Confidential, Highly Confidential - Attorneys' Eyes Only, or Highly Confidential - Outside Counsel Only ("Protected Material") pursuant to the Stipulated Protective Order entered in this case on July 23, 2014, Dkt. No 49 ("Stipulated Protective Order"), must comply with Civil Local Rule 79-5 and the Stipulated Protective Order. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(d) is denied by the court, then the Party may file the information in the public record pursuant to Civil Local Rule 79-5(e) unless otherwise instructed by the court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: May 13, 2015     SHARTSIS FRIESE LLP

By: */s/ Frank A. Cialone*
    FRANK A. CIALONE

Attorneys for Plaintiff
HEARTLAND PAYMENT SYSTEMS, INC.

Dated: May 13, 2015     WINSTON & STRAWN LLP

By: */s/ Jennifer A. Golinveaux*
    JENNIFER A. GOLINVEAUX

*Attorneys for Defendant*
*Mercury Payment Systems, LLC*

Pursuant to Civil Local Rule 5.1, I hereby attest that the concurrence to the filing of this document has been obtained from each of the signatories hereto.

*/s/ Frank A. Cialone*
FRANK A. CIALONE

PURSUANT TO THE PARTIES' STIPULATION, IT IS SO ORDERED.

Dated: _____

HONORABLE CLAUDIA WILKEN

**APPENDIX A: REQUESTED LOAD FILE FORMAT FOR ESI**

1. <u>Delimited Text File</u>.  A delimited text file (DAT File) containing the fields listed in 3(a)(v) should be provided.  The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 ( )
- Quote – ASCII character 254 (þ)
- Newline – ASCII character 174 (®)

2. <u>Image Cross-Reference File (Opticon Load File)</u>.  The Opticon cross-reference file is a comma delimited file consisting of six fields per line.  There must be a line in the cross-reference file for every image in the database.  The format for the file is as follows: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount

- ImageID: The unique designation that Concordance and Opticon use to identify an image.  This should be the Bates Number of the Document.
- VolumeLabel: The name of the volume.
- ImageFilePath: The full path to the image file.
- DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document.
- FolderBreak: Leave empty.
- BoxBreak: Leave empty.
- PageCount: Number of pages in the Document.

Sample Data

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ MT00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ MT00000006.TIF,,,,

# APPENDIX B: REQUESTED METADATA FIELDS

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| **BEGBATES** | US00000001 (Unique ID) | The Bates Number associated with the first page of the Document. |
| **ENDBATES** | US00000003 (Unique ID) | The Bates Number associated with the last page of the Document. |
| **BEGATTACH** | US00000001 (Unique ID Parent-Child Relationships) | The Bates Number associated with the first page of the parent Document. |
| **ENDATTACH** | US00000008 (Unique ID Parent-Child Relationships) | The Bates Number associated with the last page of the last attachment in the Document family. |
| **ATTACHCOUNT** | Numeric | The number of attachments to the Document. |
| **PGCOUNT** | 3 (Numeric) | The Document's page count. |
| **VOLUME** | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| **SENTDATE** | MM/DD/YYYY | The date the email was sent. |
| **SENTTIME** | HH:MM | The time the email was sent. |
| **CREATEDATE** | MM/DD/YYYY | The date the Document was created. |
| **CREATETIME** | HH:MM | The time the document was created. |
| **LASTMODDATE** | MM/DD/YYYY | The date on which the Document was last modified. |
| **LASTMODTIME** | HH:MM | The time when the Document was last modified |
| **RECEIVEDDATE** | MM/DD/YYYY | The date the Document was received. |
| **RECEIVEDTIME** | HH:MM | The time the Document was received. |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| **DOCTITLE** | Resume.docx | The Document's extracted document title. |
| **EMAILSUBJECT** | Re: Vacation | Subject line extracted from an email. |
| **AUTHOR** | jsmith | The author of the Document from entered Metadata. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and email of the email's author. If only the author's email address is given, then just list the email address. |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the recipient(s) of an email. If only the email address is given, then just list the email address. |
| **CC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email. If only the email address is given, then just list the email address. |
| **BCC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email. If only the email address is given, then just list the email address. |
| **CUSTODIAN** | Joe Smith | The Document's custodian or source. |
| **TIMEZONE** | PST, CST, EST, etc. | The time zone the Document was processed in. Note: This should be the time zone where the Documents were located at time of collection. |
| **FILEPATH** | Joe Smith/email/Inbox<br>Joe Smith/email/Deleted Items<br>Joe Smith/Loose Files/Accounting/...<br>Joe Smith/Loose Files/Documents and Settings/... | Fully qualified original path to the source folder, files and/or mail stores. |

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| **APPLICATION** | MS Word, MS Excel, etc. | Type of Document by application. |
| **PAPER** | Y | Y (i.e., "Yes") if the Document originated as a paper Document; otherwise, blank. |
| **UNREAD** | Y or N | Y (i.e., "Yes") if an email is unread; N if it has been read. This value is blank for attachments and other non-email Documents. |
| **FILEEXT** | XLS | The Document's file extension. |
| **FILENAME** | Document Name.xls | The Document's file name. |
| **FILESIZE** | 125256 | The Document's file size in KB. |
| **HASH** | 9CE469B8DFAD1058C3B1E745001158EA | The MD5 or SHA Hash value or "de-duplication key" assigned to the Document. |
| **NONRESPONSIVE** | Y or N | Y (i.e., "Yes") for any attachment that is withheld as non-responsive pursuant to Section **Error! Reference source not found.**. |
| **CONFIDENTIALITY** | Confidential or Counsel Only | The Document's Confidentiality Designation. |
| **NATIVEFILE** | Y | Y (i.e., "Yes") if the Document was produced in Native Format; otherwise, blank. |
| **NATIVELINK** | D:\NATIVES\US00000001.xls | The full path to a native copy of the Document. |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

A-4
Case No. 4:14-cv-00437 CW
REVISED [PROPOSED] STIPULATED ORDER REGARDING ELECTRONIC DISCOVERY

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| **TEXTPATH** | D:\TEXT\US00000001.txt | The path to the full extracted text of the Document. There should be a folder on the deliverable, containing a separate Unicode text file per Document; these text files should be named with their Bates Numbers.<br><br>Note: emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the Document should be provided |

07530\006\7144840.v1

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

A-5
Case No. 4:14-cv-00437 CW
REVISED [PROPOSED] STIPULATED ORDER REGARDING ELECTRONIC DISCOVERY