UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEARTLAND PAYMENT SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MERCURY PAYMENTS SYSTEMS LLC, <br><br> Defendant. | Case No. 14-cv-00437-CW   (MEJ) <br><br> **DISCOVERY ORDER** <br> Re: Dkt. No. 101 |

## INTRODUCTION

Pending before the Court is the parties' joint letter brief regarding a discovery dispute related to Mercury's Responses to Heartland's Requests for Production, Nos. 63-66. Dkt. No. 101. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

Plaintiff Heartland Payment Systems, Inc. and Mercury Payments, LLC are competitors in the payment processing industry. First Am. Compl. ¶ 14. Dkt. No. 66. Both companies "acquire" businesses, described as "merchants," to sign up for payment processing services. *Id.* ¶ 11.1. Payment processing systems allow merchants to accept credit and debit cards as payment from their customers. *Id.* Both Heartland and Mercury serve small- and medium-sized merchants. *Id.* ¶ 14.

Under the pricing model pioneered by Heartland, known as "cost-plus," the merchant pays the fees charged by the card networks (e.g., Visa) and those charged by the banks (e.g., Wells Fargo) "at cost," i.e., with no mark-up by the merchant acquirer. *Id.* ¶ 28. The "plus" fee is that charged by the merchant acquirer, and it is on that fee that Heartland, Mercury, and its competitors

compete. *Id.* Heartland alleges the term "cost-plus" is a "term of art" in the industry, which means that the "acquirer (1) will pass through at cost the uncontrollable third party-charged interchange fees and assessments to the merchant, and (2) will add a separate markup, usually in some combination of percentage of a transaction and cents-per-transaction, that is supposed to represent the amount the acquirer is paid for its services." *Id.* ¶¶ 29-30. Heartland alleges Mercury deceives merchants by purporting to charge "cost-plus" while actually charging other, undisclosed, fees ("interchange fees") and pocketing the difference. *Id.* ¶ 34. It further alleges Mercury makes these false representations directly and through third-party independent sales organizations ("ISOs") who sell Mercury's processing services but have no knowledge of Mercury's scheme. *Id.* ¶¶ 64-67.

Heartland moves to compel responses to its Requests for Production of Documents Nos. 63-66, which seek litigation materials related to another case filed against Mercury: *Payment Revolution LLC v. Mercury Payment Systems, LLC*, No. 14-cv-30171 (Colo. Dist. Ct., Denver Cty.) (the "Colorado Action"). Jt. Ltr. at 1 & Ex. A. According to Heartland, Payment Revolution is an ISO that sells Mercury's processing services. *Id.* at 1. Heartland asserts that in the Colorado Action Payment Revolution alleged Mercury secretly inflates its fees, contrary to its representation to merchants that it will pass those fees through at cost.[1] *Id.* at 1. Heartland seeks the documents produced, pleadings, deposition transcripts, and expert reports "that refer or relate to card processing fees charged to merchants, including but not limited to the setting of fees and inflation of fees." *Id.* It argues the requested materials are "indisputably relevant" to this action, and Mercury is improperly withholding them. *Id.*

In response, Mercury argues Payment Revolution's lawsuit is unrelated to the present case because "the [Colorado Action] concerned a specific and extensively negotiated contract between Mercury and its business partner Payment Revolution regarding merchant allocation and fee sharing regarding specific merchant accounts." *Id.* at 4. Mercury further argues the documents sought by Heartland are protected from use and disclosure in this case by a protective order

---

[1] The parties did not provide any documents from the Colorado Action.

entered in the Colorado Action, which provides that "Discovery Materials"—including "all . . . deposition testimony . . . interrogatory responses, responses to requests for admissions, expert reports and any other information disclosed or produced by or on behalf of a Party . . . shall be used only for purposes related to the Litigation and not for any . . . other purpose." *Id.* at 5. The "Litigation" is defined as only *Payment Revolution LLC v. Mercury Payment Systems LLC*, No. 2014 CV 030171. *Id.* If Heartland seeks to circumvent the protective order, Mercury maintains Heartland must take the issue back to the Colorado court that entered it. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## DISCUSSION

As an initial matter, given the liberal scope of permissible discovery, the Court finds

3

Heartland has met its burden of establishing relevance. In the Colorado Action, Payment Revolution alleged Mercury "represented to certain merchants on their statements that it was passing through at cost the published interchange fees . . . when in fact it was 'marking up' those fees to add an improperly disclosed profit to Mercury." Jt. Ltr. at 2 (citing Payment Revolution Am. Compl. ¶ 88). Heartland also provides excerpts from publicly filed affidavits and deposition transcripts showing Payment Revolution questioned Mercury employees about the alleged hidden markups. *Id.*

In such cases, disclosure to meet the needs of parties in pending litigation is strongly favored. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) ("Allowing the fruits of one litigation to facilitate preparation in other cases advances the interest of judicial economy by avoiding the wasteful duplication of discovery."). Further, Heartland's requests are not overbroad; rather, they are targeted to materials from the Colorado Action that "refer or relate to card processing fees charged to merchants." Heartland also points out that discovery in the Colorado Action lasted only six months and only four depositions of Mercury's witnesses were taken. Jt. Ltr. at 3. Mercury has not shown that any purported burden of producing these documents outweighs its relevance. Accordingly, to the extent Heartland seeks documents from the Colorado Action related to card processing fees charged to merchants, including the setting and inflation of fees, it is entitled to such discovery. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 1232267, *6 (N.D. Cal. Apr. 12, 2012) (ordering production of Apple employees' transcripts from other litigation concerning relevant subject matter).

The issue then is whether Heartland is entitled to materials currently sealed under the protective order in the Colorado Action. Heartland previously requested from the Colorado court documents that were publicly filed in that case, but most filings had been sealed in their entirety. Jt. Ltr. at 1 n.1. Heartland states it obtained an order from the Colorado court "unsealing documents, but many filings remain heavily redacted or sealed." *Id.* From this limited record presented by the parties, it appears the Colorado court may have required the parties in the Colorado Action to unseal portions of the record. However, Heartland has not shown whether the court lifted the protective order in its entirety. While this Court may make an initial relevancy

4

finding based on the limited record before it, "the court that entered the protective order should satisfy itself that the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Foltz*, 331 F.3d at 1132. "The court that issued the order is in the best position to make the relevance assessment for it presumably is the only court familiar with the contents of the protected discovery." *Id.* Thus, although Heartland maintains the Colorado Action protective order does not prohibit disclosure in the present case, the Court finds this determination is properly left to the discretion of the Colorado court. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) ("[F]ederal civil discovery may not be used merely to subvert limitations on discovery in another proceeding . . . [and] a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." (citing *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1300 (7th Cir. 1980)).

## CONCLUSION

Based on this analysis, the Court **GRANTS** Heartland's request for litigation materials in the Colorado Action related to card processing fees charged to merchants. However, as the Court lacks authority to modify the protective order in the Colorado Action, the Court **DENIES WITHOUT PREJUDICE** Heartland's request to compel production of confidential documents.

**IT IS SO ORDERED.**

Dated: August 12, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

5