UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEARTLAND PAYMENT SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MERCURY PAYMENTS SYSTEMS LLC, <br><br> Defendant. | Case No. 14-cv-00437-CW   (MEJ) <br><br> **DISCOVERY ORDER** <br> Re: Dkt. Nos. 103, 104 |

## INTRODUCTION

Pending before the Court are the parties' joint letter briefs regarding discovery disputes related to (1) Defendant Mercury Payments, LLC ("Mercury")'s Responses to Plaintiff Heartland Payment Systems, Inc. ("Heartland")'s Requests for Production Nos. 41 and 67 (Dkt. No. 103); and (2) Heartland's Second Requests for Production Nos. 83 and 84, as well as its Second Set of Special Interrogatories Nos. 17-21 (Dkt. No. 104).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

Heartland and Mercury are competitors in the electronic payment processing industry. First Am. Compl. ("FAC") ¶ 14, Dkt. No. 66.  Both companies "acquire" businesses, described as "merchants," to sign up for payment processing services.  *Id.* ¶ 11.  Both companies focus on acquiring small- and medium-sized merchants to sign up for their payment processing services. *Id.* ¶ 17.  Payment processing systems enable "merchants to accept [a customer's] credit and debit card payments . . . in exchange for a fee from the merchant."  *Id.* ¶ 11.

Under the "cost-plus" pricing structure pioneered by Heartland, merchants pay "costs," or unavoidable set fees, to banks (e.g., Bank of America) and credit card networks (e.g., Visa), with

no mark-up from a merchant acquirer. *Id.* ¶ 28.  Merchants also pay a separate "plus" fee charged by merchant acquirers such as Heartland and Mercury, and the merchant acquirers compete on this negotiable "plus" fee.  *Id.*  According to Heartland, "cost-plus" is an industry "term of art," meaning the "acquirer (1) will pass through at cost the uncontrollable third party-charged interchange fees and assessments to the merchant, and (2) will add a separate markup, usually in some combination of percentage of a transaction and cents-per-transaction, that is supposed to represent the amount the acquirer is paid for its services."  *Id.* ¶ 29.  Heartland alleges Mercury purports to charge small- and medium-sized merchants "cost-plus," but deceives merchants by charging undisclosed fees, such as interchange fees and assessments, while pocketing the difference.  *Id.* ¶ 34.  Heartland further alleges Mercury "makes [these] false representations through third-party [independent sales organizations] who sell Mercury's processing services" but have no knowledge of Mercury's scheme.  *Id.* ¶¶ 64-67.

Heartland asserts four causes of action against Mercury: (1) false advertising in violation of 15 U.S.C. § 1125(a)(1)(B) (Lanham Act); (2) unfair competition in violation of California's Unfair Competition Law, Business and Professions Code section 17200 et seq.; (3) false advertising in violation of California Business and Professions Code section 17500 et seq.; and (4) intentional interference with prospective economic advantage.  Dkt. No. 66.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative," or can be acquired from some more convenient, less burdensome, or more economical avenue; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C).  In weighing the proposed discovery, the court must "consider[] the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## DISCUSSION

### A.  Gift Card Program Fees and Switching Fees

In the parties' first letter, Heartland moves to compel responses to its Requests for Production of Documents, seeking documents related to termination fees Mercury charges merchants, "including fees charged to transfer the administration of gift cards" and "other switching fees." Dkt. No. 103 at 1. Heartland asserts the discovery is relevant because it will: (1) reveal Mercury's "false advertising scheme" and provide "another example of the undisclosed junk fees alleged in the [FAC;]" (2) rebut Mercury's anticipated defense that merchants prefer Mercury's services, despite learning of Mercury's alleged fraud; and (3) determine if merchants were "locked in" to Mercury's services because of the threat of high termination fees, information which will assist the trier of fact in evaluating damages. *Id.* at 1-2.

Mercury, however, argues the discovery is irrelevant because the cost-plus claims in the FAC do not specifically allege the "gift card program and purported 'switching fees,'" nor do the alleged fees "fit within the pleaded definition of a 'junk fee.'" *Id.* at 3. Mercury asserts it already agreed to produce documents related to merchant complaints about cost-plus pricing that "also happen[] to relate to the gift card program." *Id.* at 4. Mercury further argues Heartland's "anticipated defense" argument is an attempt to evade Federal Rule of Civil Procedure 9(b)'s particularity requirement, and Heartland is not "entitled to 'double-dip' on its lost-profits damages under the theory" merchants stayed with Mercury because of high termination fees. *Id.* at 5.

3

1 Mercury asserts this discovery is outside the scope of the FAC, and Heartland's motion to compel
2 should therefore be denied. *Id.*

3 Having reviewed Heartland's Requests, the Court finds them relevant to the allegations
4 regarding Mercury's overall fraudulent scheme. Specifically, as Heartland maintains, the
5 purported gift card and switching fees are relevant because they relate to the undisclosed "junk"
6 fees alleged in the FAC, as such discovery may reveal Mercury's false advertising scheme. Dkt.
7 No. 103 at 1. *See United States ex. rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th
8 Cir. 2007) ("[W]here a [party] pleads a complex and far-reaching fraudulent scheme with
9 particularity, and provides examples of specific false claims . . . a [party] may proceed to
10 discovery on the entire fraudulent scheme"); *CytoSport, Inc. v. Nature's Best, Inc.*, 2007 WL
11 1040993, at *4 (E.D. Cal. Apr. 4, 2007) (even where pleading does not contain specific statement,
12 it does not mean that discovery as to that statement is precluded where it is relevant to general
13 claims regarding alleged false representations).

14 Although the gift card and switching fees are not specifically alleged in the FAC, the fees
15 are logically tied to Heartland's "hidden" and "junk" fees allegations. *See* FAC ¶¶ 1, 72-88.
16 Heartland also describes junk fees as "fictional fees" that are undisclosed in Mercury's
17 advertisements. *Id.* ¶¶ 72, 84-88. Thus, gift card and switching fees appear to fit within the
18 definition of a "junk fee," as they were undisclosed to merchants. *See CytoSport*, 2007 WL
19 1040993, at *4 (although the phrase "Lean Muscle Formula" was not specifically alleged in the
20 pleadings, it was "logically tied" to other "specifically identified phrases," and thus was
21 discoverable as relevant to the general false advertising allegations). Moreover, Heartland
22 maintains it identified junk fees in its FAC for illustrative purposes to show Mercury's purported
23 "fraudulent course of conduct." Dkt. No. 103 at 3. Based on Heartland's core allegations, the
24 Court finds discovery should not be limited to fees used for such illustrative purposes. *See SEC v.*
25 *Wall St. Capital Funding, LLC*, 2011 WL 2295561, at *6-7 (S.D. Fla. June 10, 2011) (finding
26 discovery sought was not limited to four companies referenced in pleading, as the companies were
27 mentioned for "illustrative purposes" to reveal an ongoing fraudulent pattern).

28 The Court also finds the discovery relevant because, in evaluating damages, the trier of fact

4

will likely need to consider if merchants are "locked in" to Mercury's services due to the threat of undisclosed high termination fees. Mercury argues Heartland cannot "'double-dip' on its lost profits theory" – i.e., merchants that seek to leave Mercury because of its alleged false advertising choose to stay with Mercury to avoid the inflated termination fees. Dkt. No. 103 at 5. However, while Mercury's argument may be relevant at a later stage in the case, the Court finds it does not limit the scope of discovery. *See In re Toyota*, 2012 WL 3791716, at *8 (explaining arguments to prove "loss causation . . . may gain some traction at the summary judgment or at trial, [but] are not relevant for purposes of limiting discovery").

Mercury argues it already agreed to produce documents related to merchant complaints that "also happen[] to relate to the gift card program." Dkt. No. 103 at 4. However, "a party cannot refuse to produce discovery materials because it happens to believe the opposing party has everything it needs to answer its questions." *Millenium Holding Grp., Inc. v. Sutura, Inc.*, 2007 WL 121567, at *1 (D. Nev. Jan. 11, 2007). As the fees are related to the general allegations of Mercury's inflated fees, and are therefore relevant to the false advertising and unfair competition claims alleged in the FAC, discovery is proper as to the gift card fees and switching fees.

Heartland also asserts the discovery will refute Mercury's anticipated defense that merchants prefer Mercury's services, even after learning of Mercury's alleged fraud. Dkt. No. 103 at 1-2. In response, Mercury argues Heartland seeks to evade Rule 9(b)'s particularity standard by "fishing for evidence to support a claim [Heartland] did not plead." *Id.* at 3. Under Rule 9(b), a plaintiff alleging fraud or mistake must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Nevertheless, "Rule 9(b) does not require particularity to the degree so as to supplant general discovery methods." *Sunbird Air Serv., Inc. v. Beech Aircraft Corp.*, 789 F. Supp. 364, 366 (D. Kan. 1992). Here, the discovery is relevant to support Heartland's assertion that merchants stayed with Mercury because they were faced with "punitive termination fees should they leave Mercury," and this relates to the general allegation that "Mercury charges something other than what it discloses in its written documents." Order re: Def.'s Mot. to Dismiss ("Mot. to Dismiss Order") at 10, Dkt. No. 70; *see also In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *9 (C.D. Cal. Mar. 12, 2012) ("A request for discovery

5

1  'should be considered relevant if there is *any possibility* that information sought may be relevant
2  to any claim or defense of any party.'" (emphasis in original) (quoting *Breon v. Coca-Cola*
3  *Bottling Co.*, 232 F.R.D. 49, 52 (D. Conn. 2005))).

4  Based on this analysis, the Court finds Heartland is entitled to the discovery it seeks
5  concerning Mercury's gift card fees and switching fees.

**B.  Calculation of Declined Authorization Fees and American Express Fees**

In the second letter, Mercury seeks a protective order prohibiting Heartland from obtaining its (1) calculation of declined authorization fees, and (2) American Express transaction fees. Dkt. No. 104 at 1. As in the first letter, Mercury argues this discovery "bears no relevance to the allegations in the FAC," and Heartland did not plead with the particularity required under Rule 9(b) that "Mercury's declined authorization and American Express fees are deceptive." *Id.* at 2-3. Mercury asserts Rule 9(b)'s particularity pleading requirement on fraud claims limits discovery to the specific fraud alleged in the pleadings. *Id.* at 1-2. Mercury further argues, "Heartland cannot use discovery to circumvent Rule 9(b) scrutiny" and assert new claims after the amended pleadings deadline has passed. *Id.* at 3. Mercury contends "Heartland seeks to expand upon those claims through irrelevant discovery into [multiple] theories of liability." *Id.* at 1.

In response, Heartland argues the declined authorization and American Express charges "bear[] directly on whether Mercury 'charges something other than what it discloses' to merchants." *Id.* at 4 (quoting Mot. to Dismiss Order at 10). Heartland asserts the discovery relates to its general false advertising and unfair competition claims, noting it alleges Mercury "add[ed] undisclosed mark-ups to interchange charges . . . and charg[ed] other undisclosed fees to merchants." *Id.* at 3 (citing FAC ¶¶ 72-88). Heartland further argues the "requested discovery does not assert 'a new claim,'" but instead seeks information "concern[ing] deceptively inflated fees to merchants." *Id.* at 3-4. According to Heartland, the disputed discovery is "square" with the FAC allegations and consistent with Rule 9(b). *Id.* at 3. Heartland asserts Mercury has failed to establish good cause for a protective order because "Mercury cannot show the requested discovery has no possibility of leading to the discovery of relevant evidence." *Id.* at 5.

Having reviewed Heartland's Discovery Requests, the Court finds the declined

1  authorization fees and American Express fees are relevant to Heartland's general allegations that
2  Mercury charges merchants "something other than what it discloses." Dkt. No. 104 at 3 (citing
3  Mot. to Dismiss Order at 10); *see In re Toyota*, 2012 WL 3791716, at *9 (a pleading's
4  "Actionable Statements" do not necessarily bind the limits of relevant or potentially relevant
5  information). For example, Heartland alleges Mercury inflated assessment fees charged by credit
6  card networks. FAC ¶¶ 23-24. According to Heartland, assessment fees include additional
7  charges from credit card networks, "such as transactions [when] a customer's credit card is
8  declined." *Id.* ¶ 24. Given that American Express is a credit card network, and its fees, as well as
9  Mercury's declined authorization fees, relate to the purported inflated assessment fees, the
10 discovery sought is relevant. The discovery also relates to Heartland's claim that Mercury "add[s]
11 undisclosed mark-ups" to its cost-plus pricing structure and "pockets the difference." Dkt. No.
12 104 at 3; FAC ¶¶ 23-24, 34. Limiting such discovery that could reasonably lead to admissible
13 evidence would be "inconsistent with the liberal policies governing discovery." *In re Toyota*,
14 2012 WL 3791716, at *9.

15       Mercury argues the requested discovery is the type of "fishing expedition" Rule 9(b)
16 prohibits. Dkt. No. 104 at 3-4. However, "Rule 9(b)'s directive to plead fraud with particularity
17 is a pleading rule, not a limitation on discovery and not the standard for the scope of discovery."
18 *Wall St.*, 2011 WL 2295561, at *5. Although Heartland did not specifically allege the declined
19 authorization fees and American transaction fees are deceptive, the fees relate to Heartland's
20 general allegations in the FAC that Mercury engages in a fraudulent and deceptive advertising
21 scheme. FAC ¶¶ 1, 3, 100. Mercury further argues "Heartland cannot use discovery to
22 circumvent Rule 9(b) scrutiny" and introduce new claims. Dkt. No. 104 at 3. However, Rule 9(b)
23 does not "allow[] access to discovery *only* when the complaint already contains all the information
24 necessary to succeed at trial." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th
25 Cir. 2009) (emphasis added). Thus, it is unnecessary for Heartland to meet Rule 9(b)'s
26 particularity requirement to obtain discovery on fees not specifically disclosed the FAC but that
27 are relevant to the alleged false advertising scheme. *See Wall St.*, 2011 WL 2295561, at *6
28 (explaining it would be "impracticable" to require the SEC to meet the particularity requirement

7

every time it sought discovery on a company that was not one of the four companies identified in the pleading). Accordingly, as the presiding judge has already determined Heartland satisfied Rule 9(b)'s requirements, *see* Mot. to Dismiss Order at 13-16, Heartland is entitled to conduct discovery into the declined authorization and American Express fees because it relates to Heartland's allegations that "Mercury charged something other than what was originally disclosed" to merchants. *See* Mot. to Dismiss Order at 7, 9; *see also Denny v. Carey*, 72 F.R.D. 574, 578 (E.D. Pa. 1976) ("[O]nce plaintiff has satisfied the minimum burden of Rule 9(b), plaintiff should be allowed to flesh out the allegations in the complaint through discovery.").

Finally, Mercury argues the requested discovery "would only multiply the issues being litigated in these proceedings," and therefore seeks a protective order preventing it. Dkt. No. 104 at 1, 3. To obtain a protective order, the party opposing discovery must show good cause, *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975), and establish that a "specific prejudice or harm will result if no protective order is granted." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). The Court finds Mercury fails to show good cause and establish that a specific prejudice and harm would result absent a protective order. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (citation omitted)). Accordingly, the Court will not issue a protective order to prevent this discovery.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Heartland's request for documents related to Mercury's gift card program fees, switching fees, calculation of declined authorization fees, and American Express fees. The Court **DENIES** Mercury's request for a protective order.

**IT IS SO ORDERED.**

Dated: October 27, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge