IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HEARTLAND PAYMENT SYSTEMS, INC.,

Plaintiff and Counter-Defendant,

v.

MERCURY PAYMENT SYSTEMS, LLC,

Defendant and Counter-Claimant.

_____/

No. C 14-0437 CW

ORDER GRANTING
MOTION TO STRIKE
AND GRANTING IN
PART AND DENYING
IN PART MOTION TO
DISMISS MERCURY'S
COUNTERCLAIMS

(Docket No. 94)

Plaintiff Heartland Payment Systems filed its original complaint on January 29, 2014.  Defendant Mercury Payment Systems moved to dismiss the complaint and, on November 7, 2014, the Court granted Mercury's motion and granted Heartland leave to amend.  Heartland filed an amended complaint, and Mercury moved to dismiss.  On February 24, 2015, the Court granted Mercury's motion in part and denied it in part.

Mercury filed its answer to Heartland's amended complaint on March 23, 2015.  In its answer, it asserted various affirmative defenses and counterclaims against Heartland.  Heartland now moves to strike Mercury's affirmative defense of unclean hands, and moves to dismiss Mercury's counterclaims in their entirety. (Docket No. 94).  Mercury has filed an opposition.  Heartland has filed a reply.  Having considered the motions on the papers, the Court GRANTS in part the motion to dismiss, DENIES it in part, GRANTS the motion to strike and GRANTS leave to amend.

BACKGROUND

The following is a summary of facts alleged in the counterclaims and taken as true for purposes of this motion.

Heartland and Mercury are competitors in the payment processing industry.  Docket No. 84, Mercury's Counterclaims ¶ 16.  Both companies offer payment processing services to small- and medium-sized businesses.  Id. ¶¶ 15-18.

Heartland advertises its services on its website.  Id. ¶ 20. On the website, Heartland states that it provides "fair, honest and fully disclosed payment solutions to help businesses prosper." Id. ¶ 21.  It purports to offer its services to all of its customers according to an "interchange-plus" pricing model.  Id. ¶ 19.  Heartland claims that the term "interchange-plus" is a term of art in the industry, which is well understood by small and medium-sized businesses.  Id.  According to Mercury, however, "interchange-plus" does not have a generally accepted meaning in the payment processing industry.  Id.

Mercury alleges that, despite Heartland's advertising that it offers "all" of its customers interchange-plus pricing, that offer extends only to customers who process $50,000 or more yearly.  Id. ¶ 23.  Mercury alleges that, in response to an unidentified survey about Heartland's advertising, several businesses complained that Heartland does not in fact offer "true" interchange-plus pricing, and that the pricing for businesses that process less than $50,000 per year is "way higher than any sane interchange-plus plan."  Id. ¶ 24.

Heartland also advertises that it offers "fair and upfront pricing" to its customers.  Id. ¶ 32.  Mercury alleges that

United States District Court
For the Northern District of California

1 businesses understand that to mean that all fees and charges are

2 disclosed in advance.  Id.  Despite this guarantee, Mercury

3 alleges that Heartland charges "hidden early-termination fees."

4 Id. ¶ 33.  Mercury alleges that three of Heartland's former

5 customers were surprised when they were charged $295 for

6 terminating their contract early.  Id. ¶ 34.

7     Mercury also alleges that Heartland "marks up certain fees

8 that it claims to pass through at cost."  Id. ¶ 33.  These fees

9 include MasterCard and Visa settlement fees.  Id.  Mercury also

10 alleges that Heartland receives rebates from American Express, but

11 fails to share those rebates with the businesses it serves.  Id.

12     In addition to Heartland's deceptive pricing, Mercury

13 alleges that Heartland falsely promises to keep businesses'

14 customer data "safe at every level."  Id. ¶ 43.  On Heartland's

15 website, it boasts that "Heartland Secure," its data protection

16 system, "is the most secure credit card processing method backed

17 by the most comprehensive merchant warranty -- in the industry."

18 Id.  It goes on to state: "Through our innovative use of

19 [encryption and tokens] we are able to protect your customer

20 credit card data from the moment you swipe their card.  After that

21 we use [another encryption] to make the data invisible to prying

22 eyes.  And this means that your business is protected like no

23 other."  Id.  Mercury alleges that this statement is false because

24 the "Heartland Secure" system is not totally secure, as admitted

25 by Heartland's Chief Information Officer when he stated, "There is

26 no such thing as totally secure software anymore, and there

27 probably never will be."  Id. ¶ 44.

28

United States District Court
For the Northern District of California

Mercury also alleges that, "since at least 2011," Heartland has engaged in "deceptive business practices" by charging a fee and describing it on merchant statements as a "Service & Regulatory Mandate." Id. ¶¶ 3, 75 (describing the "mandate" as "but one specific example of Heartland's deceptive business practices"). According to Mercury, "[n]o such regulatory 'mandate' exists in the industry," id. ¶ 75, and using that terminology suggests that Heartland must charge the fee when, in fact, it charges the fee and keeps the proceeds without providing them to any regulatory entity, id.

In addition to its allegedly deceptive practices, Heartland has created a website that allegedly includes disparaging remarks about Mercury. Id. ¶ 52. On the site, Heartland states that Mercury has overcharged and defrauded businesses in the amount of $68,400,000 and has inflated Visa and MasterCard fees. Id. ¶ 53. Heartland also published a press release on the website that refers to this litigation. Id. Mercury alleges that it has suffered damages due to Heartland's conduct. Id. ¶ 60.

Mercury asserts five causes of action against Heartland: (1) false advertising in violation of 15 U.S.C. § 1125(a)(1)(B) (Lanham Act); (2) unfair competition in violation of California's Unfair Competition Law, Business and Professions Code section 17200 et seq. (UCL); (3) false advertising in violation of California Business and Professions Code section 17500 et seq. (FAL); (4) defamation; and (5) trade libel. As is relevant to this motion, Mercury also asserts an unclean hands affirmative defense.

LEGAL STANDARD

The standards that apply to the complaint apply to the counterclaims as well.  See Charles Allen Wright & Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1407 (3d ed.) (noting that the "pleading of counterclaims and crossclaims is subject to the same Rule 8 standards that apply to the statement of any claim for relief" and that "an attempt to invoke Rule 13 must state a claim upon which relief can be granted . . .").  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the complaining party.  Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008).  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice.  Id.  However, the court need not accept legal conclusions, including "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the complaining party leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

I.   Rule 9(b)

As a threshold matter, Heartland argues that Mercury's false advertising, FAL and UCL causes of action fail because they do not satisfy the heightened pleading requirements of Rule 9(b).

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "Therefore, in an action based on state law, while a district court will rely on state law to ascertain the elements of fraud that a party must plead, it will also follow Rule 9(b) in requiring that the circumstances of the fraud be pleaded with particularity."  Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 996 (N.D. Cal. 2009); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  "[W]hen the claim is 'grounded in fraud,' the pleading of that claim as a whole is subject to Rule 9(b)'s particularity requirement."  Marolda, 672 F. Supp. 2d at 997 (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104 (9th Cir. 2003)).  A plaintiff must describe the

**United States District Court**
For the Northern District of California

alleged fraud in specific enough terms "to give defendants notice of the particular misconduct so that they can defend against the charge." Kearns, 567 F.3d at 1124.  Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the alleged fraudulent conduct.  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (1991).

While Mercury may not use the word "fraud" in its false advertising, UCL and FAL causes of action, it has alleged "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [its] claim[s]."  See Kearns, 567 F.3d at 1125.  Throughout these counterclaims, Mercury alleges that Heartland has "intentionally set out to deceive the relevant consuming public."  Mercury's Counterclaims ¶¶ 27, 38, 47.  It claims that Heartland's advertisements are "literally false or misleading."  Id. ¶¶ 30, 41, 45.  Mercury also seeks punitive damages under California law "in view of Heartland's willful and malicious conduct."  Docket No. 84 at 40.

Accordingly, the Court finds that Mercury must plead each of its false advertising, UCL and FAL claims with the particularity required by Rule 9(b).  Mercury's defamation and trade libel claims relate to Heartland's statements on a website about Mercury and this litigation, and Heartland does not respond specifically

to Mercury's argument that Rule 9(b) does not apply to these claims.  The Court assumes that it does not.

II.   First Cause of Action: False Advertising in Violation of 15 U.S.C. § 1125(a)(1)(B) (Lanham Act)

Mercury alleges that Heartland falsely advertises its "Interchange-Plus" pricing model, its "Fair and Upfront" pricing guarantee and its data security system.

> The elements of a Lanham Act . . . false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997) (citing 15 U.S.C. § 1125(a)(1)(B)).  Accordingly,

> to succeed on an Internet false advertising claim, a plaintiff must show that a statement made in a commercial advertisement or promotion is false or misleading, that it actually deceives or has the tendency to deceive a substantial segment of its audience, that it's likely to influence purchasing decisions and that the plaintiff has been or is likely to be injured by the false advertisement.

TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 828 (9th Cir. 2011).

As discussed below, Mercury fails to state a claim under Rule 9(b) and the Lanham Act.

1.   "Interchange-Plus" pricing

It appears that Mercury's sole allegation on this point is that Heartland's website falsely states that "all" merchants are offered "interchange-plus" pricing.  However, the facts Mercury provides in support of that allegation suggest that the real issue

8

United States District Court
For the Northern District of California

is not that "all" merchants do not receive "interchange-plus" pricing, but that the pricing offered to businesses with less than $50,000 yearly processing is not "true" or "sane" "interchange-plus" pricing.  See Mercury's Counterclaims ¶ 24.

Heartland argues, "Mercury fails to plead any explanation of how Heartland's plan offered to merchants who process less than $50,000 per year is inconsistent with interchange-plus pricing." Heartland's Mot. to Dismiss, Docket No. 94 at 11.  The Court agrees.  Other than the alleged statements of two anonymous merchants commenting on an unidentified survey, Mercury states no facts to support the allegation that Heartland's customers that process less than $50,000 a year are not receiving "interchange-plus" pricing.  Mercury does not identify the survey that reported these merchants' alleged dissatisfaction with Heartland's services, or provide any facts to support the inference that the survey exists or that the merchants' claims are credible.

Thus, Mercury fails to state facts sufficient to support its allegation that Heartland's "interchange-plus" pricing claim is false or misleading.  Accordingly, this cause of action cannot be based on the allegedly false "interchange-plus" pricing guarantee.

2.   "Fair and Upfront" pricing

Mercury claims that Heartland's guarantee of "fair and upfront pricing" is false because Heartland: (1) fails to pass through at cost MasterCard and Visa settlement fees; (2) fails to share an American Express rebate with businesses; and (3) fails to disclose an early termination fee.  Heartland argues this basis for Mercury's Lanham Act claim should be dismissed because Mercury "never provides an explanation or support for its allegation that

Heartland falsely advertises these fees or pricing." Docket No. 94 at 12.

Mercury does not state any facts to support its allegation that the MasterCard and Visa settlement fees are not disclosed. It does not state what the settlement fees are or how they should be disclosed in order to support the inference that those fees are not disclosed "upfront." Likewise, it does not state any facts to support the inference that those fees are marked-up and, thus, are not "passed through at cost."

In addition, Mercury's allegation with regard to the American Express rebate is insufficient to support its claim. Mercury alleges that the phrase "fair and upfront pricing" "necessarily implies that Heartland will not . . . siphon off rebates received from card networks." Mercury's Counterclaims ¶ 36. Mercury does not provide any facts to support the conclusion that telling businesses how they will be charged also implies that Heartland will share money that is returned to it by the card network.

Lastly, with regard to the early termination fees, Mercury again relies on the responses to an unidentified survey of anonymous businesses that formerly used Heartland's services. Pleading that a termination fee was not disclosed until a merchant had signed a contract, and that nonetheless a termination fee was later charged, could constitute pleading that the "fair and upfront pricing" advertisement was false or misleading. Nonetheless, the Court agrees with Heartland that Mercury has failed to meet its Rule 9(b) requirements. Mercury alleges that a first businessperson stated that he or she was told by a Heartland sales representative that there was no cancellation fee or

United States District Court
For the Northern District of California

penalty, and that the fee does not appear "on any document you sign." Mercury's Counterclaims ¶ 34 (quotation marks omitted). Yet when he or she cancelled the contract, a fee was charged. <u>Id.</u> To the extent Mercury relies on a sales representative's statement rather than Heartland's website, it is insufficient under Rule 9(b); for oral statements, the complainant must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." <u>Tarmann</u>, 2 Cal. App. 4th at 157. To the extent this allegation and Mercury's allegation that two other business owners stated that the early termination fee was not disclosed in Heartland's contract or any document they signed, the allegations do not support Mercury's claim that the fee was not disclosed "upfront" elsewhere. And one of those unidentified merchants' statement to the unidentified surveyor about an undisclosed termination fee is also insufficient under Rule 9(b) to allege how the "fair and upfront pricing" advertisement was false or misleading because he or she does not state that he or she was charged the fee.

Thus, Mercury fails to state facts sufficient to support its allegation that Heartland's "fair and upfront pricing" claim is false or misleading. Accordingly, this cause of action cannot be based on the allegedly false "fair and upfront pricing" guarantee.

### 3. Data security

Mercury alleges that Heartland's website contains a statement about how securely the "Heartland Secure" data protection system keeps businesses' customer data. Mercury's Counterclaims ¶ 43.

**United States District Court**
For the Northern District of California

Mercury claims that the statement "necessarily implies" that
Heartland's security system is "totally secure."  Id. ¶ 45.

Mercury does not state any facts to support its conclusion
that Heartland's description of its data security system implies
that the system is "totally secure."  Nowhere in Heartland's
statement does the phrase "totally secure" appear.  Furthermore,
Mercury does not state any facts to support the conclusion that
Heartland does not provide the "most secure credit card processing
methods backed by the most comprehensive merchant warranty . . .
in the industry."

Thus, Mercury fails to state facts sufficient to support its
allegation that Heartland's data security claim is false or
misleading.  Accordingly, this cause of action cannot be based on
the allegedly false data security statements.

> 4.   Conclusion

For all the reasons discussed above, Mercury has failed to
plead its Lanham Act cause of action with the particularity
required by Rule 9(b).  Accordingly, the Court GRANTS Heartland's
motion to dismiss the Lanham Act cause of action.  Mercury is
granted leave to amend to remedy these deficiencies if it can do
so truthfully and without contradicting the allegations in its
prior pleadings.

III. Second Cause of Action: Unfair Competition in Violation of
     California Business and Professions Code section 17200 et
     seq. (UCL)

The UCL prohibits "any unlawful, unfair or fraudulent
business act . . . ."  Cal. Bus. & Prof. Code § 17200 et seq.
Because section 17200 is written in the disjunctive, it

establishes three types of unfair competition.  Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 593 (2009).  Therefore, a practice may be prohibited as unfair or deceptive even if it is not unlawful and vice versa.  Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996).  Mercury alleges claims under all three prongs.  Because the counterclaims sound in fraud, Mercury must plead its UCL causes of action in accordance with Rule 9(b).

A.   Unlawful business practices

An unlawful business practice includes anything that can be called a business practice and that is forbidden by law.  Ticconi v. Blue Shield of Cal. Life & Health Ins., 160 Cal. App. 4th 528, 539 (2008).  Any federal, state or local law can serve as a predicate for an unlawful business practice action.  Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 718 (2001). Thus, the UCL incorporates violations of other laws and treats them as unlawful practices independently actionable under the UCL. Id.; Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000); Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).

Because Mercury relies on the same allegations to support this claim as it does to support its Lanham Act claim and its California False Advertising claim, Mercury's allegations fail under Rule 9(b) and are insufficient to state a claim under either statute, as discussed elsewhere in this order.

Accordingly, Mercury's unlawful business practice claim fails.

13

United States District Court
For the Northern District of California

B.  Unfair business practices

"When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200," the Court considers "'unfair' in that section [to] mean[] conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc., 20 Cal. 4th at 187 (footnote omitted)).

Mercury alleges that Heartland's actions "constitute unfair competition" because they, in part, "threaten an incipient violation of a consumer law, including but not limited to Section 5 of the Federal Trade Commission Act, violate the policy or spirit of such law, and/or otherwise threaten or harm competition."  Mercury's Counterclaims ¶ 73.

Because Mercury relies on the same allegations to support this claim as it does to support its Lanham Act claim and its California False Advertising claim, Mercury's allegations fail under Rule 9(b), as discussed elsewhere in this order.  In addition, although the Court allowed Heartland's allegations of Mercury's deceptive practices to proceed under the "unfair" prong of the UCL, the Court notes that Cel-Tech indicates that only incipient violations of antitrust laws satisfy this prong.  It may be that further proceedings will show that neither party may proceed under this prong, even if it plead its fraud allegations with sufficient particularity.

Accordingly, Mercury's unfair business practice claim fails.

14

United States District Court
For the Northern District of California

C.   Fraudulent business practices

"A fraudulent business practice is one in which members of the public are likely to be deceived."  Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1254 (2009).

Mercury alleges that Heartland's actions "are fraudulent in that they are likely to mislead the public; or [that] [t]hey constitute acts of untrue and misleading advertising."  Mercury's Counterclaims ¶ 73.  As discussed above, Mercury's allegations fail under Rule 9(b).  Mercury fails to state any facts to support the allegation that statements on Heartland's website or in merchant statements are deceptive or misleading.

In addition, to the extent Mercury relies on its allegation that Heartland engaged in "deceptive business practices" by charging a fee it described on merchant statements as a "Service & Regulatory Mandate," the Court agrees with Heartland that Mercury fails to meet Rule 9(b)'s requirements.  Mercury explains that using the words "Service & Regulatory Mandate" on merchant statements "since at least 2001," by itself—rather than using such terminology alongside any other disclosures—is deceptive because no such regulatory mandate exists.  Yet, as Heartland argues, Mercury does not plead an instance in which Heartland charged the fee or how Heartland presented the fee to merchants on a billing statement, Merchant Application or other document.

Accordingly, Mercury's fraudulent business practice claim fails.

D.   Conclusion

For all the reasons discussed above, Mercury has failed to plead its UCL cause of action with the particularity required by

**United States District Court**
For the Northern District of California

Rule 9(b).  Accordingly, the Court GRANTS Heartland's motion to dismiss this cause of action.  Mercury is granted leave to amend to remedy these deficiencies if it can do so truthfully and without contradicting the allegations in its prior pleadings.

IV.   Third Cause of Action: False Advertising in Violation of California Business and Professions Code section 17500 <u>et seq.</u> (FAL)

> California's False Advertising Law makes it unlawful for any person to induce the public to enter into any obligation based on a statement that is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. Whether an advertisement is misleading must be judged by the effect it would have on a reasonable consumer. . . .  A reasonable consumer is the ordinary consumer acting reasonably under the circumstances.  To prevail under this standard, [Plaintiff] must show that members of the public are likely to be deceived by the advertisement.

<u>Davis v. HSBC Bank Nev., N.A.</u>, 691 F.3d 1152, 1162 (9th Cir. 2012) (citations omitted).

Mercury relies on the same set of facts to support its FAL claims as it does to support its Lanham Act claim.  Thus, for the reasons discussed above, Mercury has failed to plead its FAL cause of action with the particularity required by Rule 9(b).  Mercury fails to state any facts to support the allegation that statements on Heartland's website are deceptive or misleading.  Accordingly, the Court GRANTS Heartland's motion to dismiss the FAL cause of action.  Mercury is granted leave to amend to remedy these deficiencies if it can do so truthfully and without contradicting the allegations in its prior pleadings.

V.    Fourth Cause of Action: Defamation

Mercury argues that statements on Heartland's "Merchant Services Defense" website, specifically that Heartland has "found direct evidence of Mercury's deceptive practices," were made with

the intent to defame Mercury.  Mercury alleges that Heartland
published these statements on a webpage titled "Pennies Add Up,"
which Mercury downloaded on March 20, 2015.  Mercury's
Counterclaims ¶ 53.  It also claims that Heartland has "disparaged
[it] in other direct or indirect communications with other members
of the payment processing industry[.]"  Mercury's Counterclaims
¶ 56.  Heartland argues that this claim is barred by the statute
of limitations and that, with regard to the "direct or indirect
communications," Mercury fails to state a claim.

    A.    Statute of Limitations

    Under California law, the statute of limitations for
defamation is one year.  Cal. Civ. Proc. Code § 340.  California
courts follow the "single publication" rule for statements made in
mass communications:

> No person shall have more than one cause of action for
> damages for libel or slander or invasion of privacy or any
> other tort founded upon any single publication or exhibition
> or utterance, such as any one issue of a newspaper or book or
> magazine or any one presentation to an audience or any one
> broadcast over radio or television or any one exhibition of a
> motion picture.  Recovery in any action shall include all
> damages for any such tort suffered by the plaintiff in all
> jurisdictions.

Cal. Civ. Code § 3425.3.  The Ninth Circuit has held that
California Courts of Appeal have uniformly applied this rule to
websites.  See Roberts v. McAfee, Inc., 660 F.3d 1156, 1167 (9th
Cir. 2011).  Furthermore, the Ninth Circuit has held that the
publication date of webpages, for the purposes of the statute of
limitations, is the date the allegedly defamatory statements were
first posted on the website.  See id. ("Information is generally
considered 'published' within the meaning of the single-
publication rule when it is first made available to the

**United States District Court**
For the Northern District of California

public[.]").  Thus, claims brought more than one year from an initial publication on a website are time-barred.  See id. at 1169.

Mercury states in its opposition that its "[c]ounterclaims allege that the Defamatory Statements were published on March 20, 2015 – well within the one-year statute of limitations for defamation claims."  Docket No. 98 at 20.

However, as Heartland points out, Mercury's argument in its opposition, that the webpage was published on March 20, 2015, see id., is different from its allegation in its counterclaims, that it downloaded the webpage on March 20, 2015.  See Mercury's Counterclaims ¶ 53.  The statute of limitations for a defamation claim begins to run as of the date the information was "first made available to the public."  Roberts, 660 F.3d at 1167.  In its counterclaims, Mercury does not allege when the information was first published, only that it downloaded the information on March 20, 2015.

Heartland argues that Mercury must concede that the allegedly defamatory statements were made on January 30, 2014, because Mercury's counterclaim alleges that, on that date, Heartland published a press release announcing this litigation with a link to a "Merchant Services Defense" website containing the webpage at issue.  Mercury does not allege that the webpage was changed or that content was added to it since it was first published.  Thus, Mercury's defamation claim would be time-barred as of January 30, 2015.  Heartland's argument is well-taken.

Regardless, Mercury argues that its defamation claim is a compulsory counterclaim.  Thus, the statute of limitations was

tolled by the filing of Heartland's complaint on January 29, 2014, and the claim was not time-barred when the counterclaims were filed on March 23, 2015.  Mercury relies on <u>Sidney v. Superior Court</u>, 198 Cal. App. 3d 710 (1988), which explained:

> Although ordinarily the statute of limitations will bar a cross-complaint in the same fashion as if the defendant had brought an independent action, the rule is different when the original complaint was filed before the statute of limitations on the cross-complaint had elapsed . . . .  Such a cross-complaint need only be subject-matter related to the plaintiff's complaint —- i.e. arise out of the same occurrence —- to relate back to the date of filing the complaint for statute of limitation purposes.

<u>Id.</u> at 714 (citations, quotation marks and brackets omitted).  For the purpose of the statute of limitations, if the defamation cause of action is a compulsory counterclaim, the claim is tolled as of the date of the complaint.  <u>See</u> <u>Burger v. Kuimelis</u>, 325 F. Supp. 2d 1026, 1045 (N.D. Cal. 2004) ("Under <u>Sidney</u>, the commencement of an action by a plaintiff tolls the statute of limitations for any counterclaims that 'arise out of the same occurrence' as the allegations of the complaint."  (citation omitted)).  Heartland argues that this rule does not apply here because "Mercury's defamation claim is based entirely on alleged conduct that took place after Heartland filed its Complaint, and therefore does not arise from the same transactions or occurrences that are at issue in the Complaint."  Docket No. 94 at 20.  Thus, the question is whether a defamation claim, with regard to statements made by Heartland after the complaint was filed, can be considered a compulsory counterclaim.

As the parties agree, the Ninth Circuit has explicitly declined to decide this issue, but has discussed it.  In <u>Pochiro</u>

v. Prudential Ins. Co. of Am., 827 F.2d 1246 (9th Cir. 1987), the Ninth Circuit held, "As long as the allegedly defamatory statements are sufficiently related to [the] subject matter of the original action," they must be considered compulsory counterclaims. Id. at 1251. In Pochiro, Prudential plead various causes of action against a former employee and his wife, the Pochiros, who it alleged had used confidential records against it. The Pochiros filed a defamation counterclaim, based on Prudential's informing the employee's prospective employers about his allegedly dishonest actions. Many of the allegedly defamatory statements were made after the complaint was filed. The Ninth Circuit found that even though a few of the Pochiros' allegations "appear a bit removed from Prudential's action to enjoin the Pochiros' use of confidential records, it is undisputed that [the employee's] use of Prudential's customer records is inextricably intertwined with the facts as alleged in the Pochiros' complaint." Id. at 1250. The Ninth Circuit acknowledged that, in the Second Circuit, "a counterclaim which stems from the filing of the main action and subsequent alleged defamations is not a compulsory counterclaim." 827 F.2d at 1251 n.9 (citing Harris v. Steinem, 571 F.2d 119, 124 (2nd Cir. 1978)). The Ninth Circuit surmised,

> The rationale for [the Second Circuit's] rule seems to be that statements made after the filing of the original complaint simply cannot be logically related to the "transaction" which gave rise to the original complaint. This creates an exception to the general rule that an otherwise logically related claim need only have accrued by the time a responsive pleading is filed in the first action, not by the time of the complaint. . . . Indeed, Harris and the cases it relies upon seem to view any alleged defamation as a separate transaction from the underlying claim.

1    Id.  The Ninth Circuit then expressly declined to reach the

2    "limited issue actually addressed by Harris" because the Pochiros

3    also alleged that Prudential made some defamatory statements prior

4    to filing its complaint.  Id.

5        Thus, there is no Ninth Circuit precedent that resolves this

6    issue.  The Court is persuaded, however, that the general rule is

7    that if "the allegedly defamatory statements are sufficiently

8    related to subject matter of the original action" the defamation

9    claim is a compulsory counterclaim even if the alleged statements

10   were made after the complaint was filed.  Here, the facts

11   underlying Mercury's defamation claim are sufficiently linked to

12   the facts alleged in Heartland's complaint because the defamation

13   claim alleges that Heartland's statements—that Mercury defrauded

14   merchants—were false; if Heartland were to prevail on its fraud

15   claims against Mercury, Mercury could be collaterally estopped

16   from pursuing this defamation claim.  Thus, even if the alleged

17   defamatory statements were first published on January 30, 2014 at

18   the time of Heartland's press release, the defamation claim would

19   not be time-barred.

20       Accordingly, taking the facts as alleged in the counterclaims

21   as true, Mercury's defamation cause of action is not time-barred.

22   The Court will now turn to the sufficiency of the allegations.

23            2.   Failure to state a claim

24       As already noted, Mercury alleges that, on a webpage titled

25   "Pennies Add Up," Heartland has published disparaging statements

26   that "Mercury has 'deceiv[ed] merchants' and 'misrepresented

27   pennies per transaction' by 'falsely inflat[ing] pass-through Visa

28

1 and MasterCard interchange fees of four (4) cents per

2 transaction'[.]"  Mercury's Counterclaims ¶ 53.

3     As stated above, under California law, a claim for defamation

4 requires the intentional publication of a statement that is false,

5 unprivileged, and has a tendency to injure.  Cal. Civ. Code §§ 44-

6 46.  There is little doubt that the "Pennies Add Up" webpage was

7 an intentional publication.  Mercury also alleges adequate facts

8 with particularity to support the allegation that the webpage

9 contains false statements, and that such false statements have a

10 tendency to injure Mercury.  Thus, with regard to statements on

11 the "Pennies Add Up" webpage that specifically state that Mercury

12 has deceived or overcharged its customers, Mercury has alleged

13 facts sufficient to support its defamation claim.  Even if Rule

14 9(b) applies, Mercury has stated those facts with the

15 particularity required by Rule 9(b).

16     However, allegations relating to the January 30, 2014 press

17 release itself are insufficient to state a claim for defamation.

18 Mercury does not state what defamatory information is included in

19 the press release.  Likewise, the Court agrees with Heartland that

20 Mercury's reference to "other direct or indirect communications

21 with other members of the payment processing industry concerning

22 Heartland's allegations in its Complaint and Amended Complaint,"

23 Mercury's Counterclaims ¶ 56, is vague and fails to meet even Rule

24 8 pleading requirements.  Mercury has not stated any facts to

25 support the inference that Heartland's "other direct or indirect

26 communications" were defamatory.

27

28

3.   Conclusion

Accordingly, for the reasons discussed above, to the extent Mercury's defamation cause of action is based on the "Pennies Add Up" webpage, the Court DENIES Heartland's motion to dismiss.  Also for the reasons above, however, the cause of action cannot be based on the January 30, 2014 press release or unspecified communications with other businesses in the industry.  Mercury is granted leave to amend to remedy these deficiencies if it can do so truthfully and without contradicting the allegations in its prior pleadings.

VI.   Fifth Cause of Action: Trade Libel

Mercury's trade libel cause of action relies on the same allegations that support its defamation cause of action.

"A cause of action for trade libel . . . requires (at a minimum): (1) a publication; (2) which induces others not to deal with plaintiff; and (3) special damages."  Nichols v. Great Am. Ins. Companies, 169 Cal. App. 3d 766, 773 (1985).  "[U]nder Fed. R. Civ. P. 9(g) the pleader must state special damages with specificity.  Counterplaintiffs must 'identify particular customers and transactions of which it was deprived as a result of the libel.'"  Piping Rock Partners, Inc. v. David Lerner Associates, Inc., 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013)(citing Mann v. Quality Old Time Service, Inc., 120 Cal. App. 4th 90, 109 (2004)).

Mercury does not identify any customer who refused to do business with it as a result of Heartland's allegedly libelous statements.  Accordingly, the Court GRANTS Heartland's motion to dismiss the trade libel cause of action.  Mercury is granted leave

to amend to remedy this deficiency if it can do so truthfully and without contradicting the allegations in its prior pleadings.

VII. Motion to Strike Unclean Hands Affirmative Defense

Heartland argues that Mercury's unclean hands defense should be stricken for failure to plead it with particularity.

Rule 8 requires that, when "responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b). Rule 12(f) provides that, on its own or on a motion by a party, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose[] of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues." Barnes v. AT&T Pension Benefit Plan—Nonbargained Program, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)). If a defense is struck, "[i]n the absence of prejudice to the opposing party, leave to amend should be freely given." Wyshak v. City Nat'l Bank, 607 F.2d 824, 826 (9th Cir. 1979). Thus Mercury's unclean hands defense must comply with Rule 8. Furthermore, because Mercury's unclean hands defense alleges fraud, it must also be plead with the particularity required by Rule 9(b).

Mercury's unclean hands defense relies on the same allegations Mercury uses unsuccessfully to support its Lanham Act and FAL causes of action. Likewise, they fail here.

Thus the Court GRANTS Heartland's Rule 12(f) motion to strike Mercury's unclean hands defense. Mercury is granted leave to

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  amend if it can do so truthfully and without contradicting its

2  previous pleadings.

3                          CONCLUSION

4       For the reasons stated above, the Court GRANTS in part

5  Heartland's motion to dismiss Mercury's counterclaims (Docket No.

6  94) and DENIES it in part.  In addition, the Court GRANTS

7  Heartland's motion to strike Mercury's unclean hands defense.

8  Within fourteen days of the date of this order, Mercury may file

9  an amended answer and counterclaims to remedy the deficiencies

10 identified above.  It may not add further claims or defenses not

11 authorized by this order.  If Mercury does not have facts to

12 support some of these claims despite due diligence, but later

13 discovers them, it may timely move for leave to amend further in

14 the future.  If Mercury files an amended answer with or without

15 counterclaims, Heartland may file a motion to strike or dismiss,

16 or both, within fourteen days of the date the amended answer is

17 filed.

18      As set in the Court's April 1, 2015 Case Management Order,

19 the parties' mediation deadline has passed.  If the parties have

20 not complied, they shall do so within twenty-eight days.  The

21 discovery deadline is July 1, 2016, and a further case management

22 conference and motion hearing is scheduled for March 2, 2017.  The

23 final pre-trial conference is scheduled for June 7, 2017, with

24 jury selection and trial to begin on June 19, 2017.

25      IT IS SO ORDERED.

26 Dated: January 26, 2016

27                          CLAUDIA WILKEN
                            United States District Judge

28